# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2086

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Joahnie Escamilla, | * |
| | * |
| Appellant. | * |

|  |  |
|---|---|
| _____ | Appeals from the United States District Court for the |
| No. 01-2553 | District of Nebraska |
| _____ | |

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| George E. Miranda, | * |
| | * |
| Appellant. | * |

_____

Submitted: December 12, 2001

Filed: September 3, 2002

_____

_____

Before McMILLIAN, HEANEY and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

George E. Miranda and Joahnie Escamilla (together, "appellants") appeal from final judgments entered in the United States District Court for the District of Nebraska[1] after pleading guilty to charges arising out of a traffic stop where state patrol officers found five kilograms of cocaine in appellants' minivan. United States v. Miranda, No. 8:00CR109 (D. Neb. Nov. 27, 2000) (memorandum and order). For reversal, appellants argue that the district court erred in denying their motion to suppress the cocaine on the ground that the state patrol trooper unlawfully stopped their vehicle in violation of the Fourth Amendment. For the reasons discussed below, we affirm the judgment of the district court.

## I. Background

On April 20, 2000, a federal grand jury returned an indictment against appellants charging them with possession of cocaine with intent to distribute. Appellants immediately moved to suppress the cocaine on the ground that the April 5, 2000 stop of their minivan was unlawful. On June 28, 2000, the magistrate judge conducted an evidentiary hearing on that issue and subsequently recommended that the motion to suppress be denied. The district court reviewed the recommendation *de novo* and adopted it in its entirety. On January 5, 2001, Escamilla pled guilty to misprison of a felony and was sentenced to twenty-one months of imprisonment and one year of supervised release. On January 25, 2001, Miranda pled guilty to possession of cocaine with intent to distribute and was sentenced to 121 months of

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

-2-

imprisonment and five years of supervised release. Appellants now appeal the district court's denial of the motion to suppress the cocaine. The following facts, which are not in dispute, are derived from the June 28, 2000 evidentiary hearing.

At approximately 8:00 AM on Wednesday, April 5, 2000, Nebraska State Patrol Trooper Andrew Duis was driving eastbound in the left lane of Interstate 80 near Grand Island, Nebraska. He observed a grey minivan, also traveling eastbound, change from the left lane to the right lane to pass a semi-tractor trailer without properly signaling the lane change. Duis saw a driver and a passenger in the minivan and learned from dispatch that the van was a rented vehicle. He also saw that there was no luggage in the rear of the minivan. Duis testified that he waited for the minivan to completely pass the semi-tractor trailer and move back into the right lane, then activated his overhead lights to stop the minivan. The minivan pulled over onto the right shoulder of Interstate 80, and Duis pulled over behind it.

Duis walked over to the passenger side of the minivan and asked the driver, Miranda, for his driver's license and registration. Miranda told Duis that he had a valid license but that he did not have it with him, and instead gave Duis an Arizona identification card. Miranda also told Duis that there was no registration for the minivan because it was a rental vehicle. Escamilla, who was sitting in the passenger seat, produced the rental papers at Duis's request. Escamilla then showed Duis her driver's license and indicated that the minivan had been rented in her name. Duis explained the violation to appellants and told them that he would give them a written warning instead of issuing a violation ticket. Miranda said that he understood and apologized for the violation.

Duis testified that he next asked Miranda to come back to the police cruiser with him because Miranda's failure to produce a driver's license raised Duis's suspicions about whether Miranda actually was authorized to drive. Miranda agreed and accompanied Duis to the cruiser. At the cruiser, while Duis initiated a computer

check to verify that Miranda was licensed to drive, Duis asked Miranda where the couple was headed. Miranda responded that they were on an early honeymoon and that they were "just cruising around." He added that they had just been in Denver, Colorado, to see the roller coasters and that they were now headed back to Tucson, Arizona, because he needed to go back to work on Monday. Duis told Miranda that he was going to return the rental papers to Escamilla, and asked Miranda to wait in the cruiser.

Duis returned to the passenger side of the minivan, handed the rental papers back to Escamilla, and asked her the same question about where the couple had been traveling. Escamilla answered that they were going to Omaha, Nebraska, to meet her father, whom she had never met, to tell him that she was pregnant. Escamilla said that they planned to find her father by looking in the phone book once they arrived in Omaha. She did not mention that the couple was on an early honeymoon or that they had just come from Denver, but she did say that Miranda needed to be back in Tucson by Monday to return to work.

Duis testified that, by this point, his suspicions were raised because (1) with the sole exception of the return date, Escamilla's statements about the couple's travel plans differed markedly from Miranda's statements; (2) it seemed odd that they would travel so far to locate someone she had never met and whom they had no actual way to contact; (3) it seemed equally implausible that they would travel all the way to Denver just to see roller coasters; and (4) there was no luggage in the minivan.

Duis returned to the vehicle, received the results of the computer check, and learned that Miranda did not have a valid driver's license. Duis then gave Miranda the warning ticket and told him that Escamilla would have to drive the minivan because only she had a valid driver's license. Duis told Miranda that he was free to go, but asked whether Miranda had a few minutes to answer some questions. Miranda said that he did. Duis then asked Miranda whether the couple was carrying

anything illegal in the minivan, and specifically asked whether they were transporting marijuana or cocaine. Miranda answered in the negative. Duis asked Miranda whether he could search the minivan, and Miranda responded that Duis would have to ask Escamilla.

Duis walked back over to the minivan and informed Escamilla of the details of his conversation with Miranda regarding drugs and a search of the vehicle. Escamilla interrupted and told Duis to "go ahead" and conduct the search. Duis again asked her whether she was consenting to the search, and Escamila again gave him permission to search the vehicle. Duis asked Escamilla to stand with Miranda behind the minivan while he and another officer, who had just arrived for backup, searched it. Appellants both watched as Duis and the other trooper searched the entire minivan, and neither objected to the search at any time. The troopers found packages of cocaine in the rear doors, in the driver's sidewall, and in the backrest and seats of both bench seats. At approximately 8:22 AM, about twenty minutes after Duis pulled over the minivan, the troopers placed appellants under arrest and transported them to the Nebraska State Patrol Office.

## II. Discussion

On an appeal of a motion to suppress evidence, this court reviews the district court's factual findings for clear error and its conclusions of law *de novo*. See United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000).

There is no dispute that, once pulled over, appellants readily and repeatedly consented to a search of their vehicle and that the state troopers found cocaine while conducting that search. The gravamen of appellants' argument is that Duis's articulated reason for pulling over their minivan – that appellants changed lanes without properly signaling – was a pretense for his ulterior motive of wanting to conduct a general criminal investigation. In making this argument, appellants

concede that "the past decisions of this Circuit and the United States Supreme Court have held that courts are not to inquire into the subjective intentions of an officer making the kind of road stop at issue in the present case, but instead are to focus only on whether there was probable cause to believe a traffic infraction occurred." Appellants' Consolidated Opening Brief at 10.

Here, there is no dispute that appellants changed lanes without properly signaling. As the district court correctly explained and as appellants acknowledge, it is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity. See, e.g., United States v. Clarke, 110 F.3d 612, 614 (8th Cir. 1997) ("In analyzing [the defendant's] arrest under the fourth amendment, we . . . ignore the officers' subjective intentions and focus solely on the objective question of whether probable cause existed."); United States v. Pipes, 125 F.3d 638, 640 (8th Cir. 1997) ("'If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.'"); United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) ("The officers' suspicion that [the defendant] was involved in drug activity does not affect the stop's objective reasonableness."); United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995) ("So long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop."). Because the facts of this case fit squarely within circuit precedent, we respectfully decline to revisit this issue, see United States v. Provost, 969 F.2d 617, 622 (1992) ("Even if we were inclined to do so, which we are not, one panel of this court may not reverse or overturn a decision by an earlier panel."), and affirm the well-reasoned decision of the district court. See 8th Cir. R. 47B.

## III. Conclusion

The decision of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.