# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3390

———————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Southern District of Iowa.
Leonel Rodriguez-Ceballos,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

———————

Submitted: February 15, 2005
Filed: May 16, 2005

———————

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

———————

RILEY, Circuit Judge.

Leonel Rodriguez-Ceballos (Rodriguez-Ceballos) appeals the sentence he received after pleading guilty to illegal reentry following deportation. We reverse the district court, vacate Rodriguez-Ceballos's sentence, and remand for resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005).

## I.　　BACKGROUND

On December 20, 2002, Rodriguez-Ceballos pled guilty to illegal reentry following deportation, in violation of 8 U.S.C. § 1326. The Presentence Investigation Report (PSR) recommended an offense level of 21, which included a 16-level

enhancement based on a prior conviction for an aggravated felony (an Iowa conviction for domestic abuse involving assault with a dangerous weapon) and a 3-level reduction for acceptance of responsibility. The PSR calculated Rodriguez-Ceballos's criminal history category at level II. Based on these calculations, the PSR stated the sentencing range under the United States Sentencing Guidelines (Guidelines) was between 41 and 51 months imprisonment. Rodriguez-Ceballos did not lodge any objections to the PSR based on the Sixth Amendment, but objected to the 16-level enhancement because it "overstate[d] the seriousness of [Rodriguez-Ceballos]'s prior record."

At the sentencing hearing held on April 4, 2003, Rodriguez-Ceballos sought a downward departure, arguing "the 16-level enhancement overstates the seriousness of [Rodriguez-Ceballos]'s prior offense." After the female victim of the Iowa assault testified at Rodriguez-Ceballos's sentencing hearing, Rodriguez-Ceballos argued the assault was a one-time occurrence, the woman no longer fears Rodriguez-Ceballos, the woman supports Rodriguez-Ceballos's sentencing position, and the assault conviction arose from a misunderstanding caused by the English-Spanish language barrier. In response, the government argued the district court did not have the "authority to depart," and, even if it did, it "would abuse its discretion" if it departed. Concluding it had the "authority to depart under these circumstances," the district court found "the entire 16-level increase that has been applied under the circumstances of the guidelines with regard to Mr. Rodriguez does create a disproportionate impact on him, and therefore I think a departure is an appropriate exercise of discretion in this case." However, the court also recognized "the prior conviction was for a crime of violence, and that does have some impact on how far the Court is willing to depart." Thus, the court decided "to depart down to offense level 16, with a criminal history category of II." Based on these findings, the district court calculated a Guidelines sentencing range of 24 to 30 months imprisonment. The district court sentenced Rodriguez-Ceballos to 24 months imprisonment.

Unsatisfied with the district court's sentencing determination, the government appealed Rodriguez-Ceballos's sentence. Concluding "the circumstance of a prior offense is [not] a proper basis to support a sentencing departure," a panel of this circuit held "the district court erred in granting Rodriguez-Ceballos a downward departure." United States v. Rodriguez-Ceballos, 365 F.3d 664, 666 (8th Cir. 2004). Thus, the circuit reversed and remanded for resentencing. Id.

Nearly two months after the circuit remanded Rodriguez-Ceballos's case for resentencing, the Supreme Court issued its decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), which held Washington's sentencing system unconstitutional, and began to change the landscape as it relates to sentencing under the Guidelines. On August 13, 2004, the district court held a resentencing hearing. Armed with the authority contained in Blakely, Rodriguez-Ceballos argued the Guidelines are unconstitutional and no provisions are severable. Rodriguez-Ceballos sought a discretionary, non-Guidelines sentence, urging the district court "to revert back to the sentencing practices that existed prior to 1987 where the court can then exercise its discretion, . . . to determine where to sentence [Rodriguez-Ceballos] within the statutory range." The government, on the other hand, maintained "Blakely does not apply to the Federal Sentencing Guidelines," but that, even if it did, "it should not affect this case because the offense level is based solely on the offense, and then the levels that were added to the base level were based solely on the issue of recidivism and [Rodriguez-Ceballos]'s criminal history."

The district court adhered to the Guidelines range when resentencing Rodriguez-Ceballos. The district court informed Rodriguez-Ceballos "that what the court is trying to do, in a very unsettled time in the law, is to try to follow the law as I understand it to be and to treat people fairly and consistently as best I can." The district court declared its task was to "necessarily follow the law as it is, not as it may be," which "is particularly pointed these days because what the law is seems to change from day to day." Given the state of Supreme Court and Eighth Circuit

-3-

precedent at the time of resentencing, the district court stated, "I am compelled to conclude, as we sit here today, that the guidelines under the circumstances presented to the court in this case still apply." Therefore, the district court concluded the Guidelines mandated a sentencing range of between 41 and 51 months imprisonment, based on an offense level of 21 and a criminal history category of II. Addressing Rodriguez-Ceballos and his Iowa assault conviction, the district court stated, "I have some concern . . . you did not commit the offense" that resulted in the 16-level enhancement, and, "to that end, I hope, sir, that what is happening here today you can tolerate and you can get beyond as you go ahead in your life and that you will not regard this in too negative a fashion, because the law does what the law must do based upon what can be determined is certain." Without the ability to depart downward, the district court sentenced Rodriguez-Ceballos to 41 months imprisonment, which represented the low end of the Guidelines range.

Rodriguez-Ceballos appeals his sentence, arguing "the federal sentencing guidelines are unconstitutional after Blakely and that it was, therefore, error to use the guidelines to determine [Rodriguez-Ceballos]'s sentence." The government maintains Rodriguez-Ceballos failed to preserve the argument he now makes on appeal because he did not raise the issue at his initial sentencing. However, "the government concedes that a remand would be necessary" if this "Court concludes that [Rodriguez-Ceballos] timely preserved his objection," given "the district court's comments at sentencing, as well as statements made to counsel in chambers." Alternatively, the government contends Blakely has no effect on this appeal because the district court sentenced Rodriguez-Ceballos based solely on his criminal history.

During the pendency of this appeal, the Supreme Court decided how Blakely impacted the Guidelines. On January 12, 2005, the Supreme Court issued its much-anticipated Booker decision, which excised two provisions of the Sentencing Reform Act of 1984, effectively creating an advisory Guidelines system in which a sentencing court must "consider Guidelines ranges," but also "permits the court to tailor the

-4-

sentence in light of other statutory concerns as well." <u>Booker</u>, 125 S. Ct. at 756-57 (citing 18 U.S.C. § 3553(a)). Under the advisory Guidelines system, courts of appeal must review sentences for unreasonableness. <u>Id.</u> at 765.

## II.    DISCUSSION

To say the least, the Guidelines landscape under which district courts operated for nearly two decades changed drastically from the time Rodriguez-Ceballos pled guilty on December 20, 2002, to the time the Supreme Court decided <u>Booker</u> on January 12, 2005. <u>See</u> <u>United States v. Pirani</u>, No. 03-2871, 2005 WL 1039976, at *2 (8th Cir. Apr. 29, 2005) (en banc) (characterizing <u>Booker</u> as creating a "profound change in federal sentencing"); <u>see</u> <u>also</u> <u>id.</u> at *17 (Bye, J., concurring in part and dissenting in part) (characterizing <u>Booker</u> as causing a "dramatic change in the federal sentencing framework"). During the course of the monumental sea change occurring in the Guidelines area, the district court was tasked with sentencing Rodriguez-Ceballos. Indeed, the district court was required to hit a moving target, and, through no real fault of its own, missed both times. Now that <u>Booker</u> and <u>Pirani</u> have steadied the target, we believe the district court should get a third shot at sentencing Rodriguez-Ceballos, this time under the advisory Guidelines system.

The standard of review will be critically important in most appeals involving <u>Booker</u> issues. <u>See</u> <u>Booker</u>, 125 S. Ct. at 769 (instructing "reviewing courts to apply ordinary prudential doctrines" to pending appeals). Indeed, the resolution of this appeal easily could turn on the standard of review. For example, if we decide Rodriguez-Ceballos preserved the <u>Blakely</u>/<u>Booker</u> issue such that our review is de novo, the government concedes we must remand for resentencing. This is a tempting proposition, as our caselaw indicates Rodriguez-Ceballos's resentencing argument concerning <u>Blakely</u> preserved the issue for this appeal, even though Rodriguez-Ceballos failed to raise such an issue during his initial sentencing. <u>See</u> <u>United States v. Ross</u>, 279 F.3d 600, 608 (8th Cir. 2002) (reviewing de novo an issue a defendant on a second appeal raised for the first time because the Supreme Court "announced

a new (although not watershed) rule of constitutional law" after the initial appeal but before the defendant's resentencing).  On the other hand, if we decide Rodriguez-Ceballos failed to preserve the Blakely/Booker issue, then we must review Rodriguez-Ceballos's sentence for plain error, Pirani, 2005 WL 1039976, at *3 (failure to preserve issue mandates plain-error review), a standard "demanding strenuous exertion to get relief" and one that "should not be too easy for defendants" to meet.  United States v. Dominguez Benitez, 124 S. Ct. 2333, 2340 (2004).  Because we conclude Rodriguez-Ceballos is entitled to resentencing regardless of the standard of review we employ, we have no need to decide whether Rodriguez-Ceballos preserved the Blakely/Booker issue before the district court.

For purposes of this appeal, we assume Rodriguez-Ceballos failed to preserve the Blakely/Booker issue.  Thus, we will conduct a plain-error analysis.  Rodriguez-Ceballos bears the burden to prove plain error, which follows the four-part test enunciated in United States v. Olano, 507 U.S. 725, 732-36 (1993).  To establish plain error under the Olano test, Rodriguez-Ceballos must establish "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." Johnson v. United States, 520 U.S. 461, 467 (1997) (listing the conditions of the Olano plain-error test) (internal quotations omitted) (alteration in original).  If Rodriguez-Ceballos establishes these three conditions, we may exercise our discretion to remand for resentencing "if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  Id. (internal quotations omitted) (alteration in original).

The first two Olano conditions are easily met in this case, because "[t]he district court (understandably) committed Booker error by applying the Guidelines as mandatory, and the error is plain, that is, clear or obvious, at this time."  Pirani, 2005 WL 1039976, at *4.  The critical third and fourth conditions ask "whether the Booker error affected [Rodriguez-Ceballos]'s 'substantial rights' in a manner that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"

Id. (quoting Johnson, 520 U.S. at 467).  The crux of this appeal lies in the answer to that question.

When considering the third condition, a remand is permitted only if Rodriguez-Ceballos establishes "a 'reasonable probability' that the district court would have imposed a more favorable sentence under the advisory sentencing guidelines regime mandated by Booker."  Id. at *1.  However, when reviewing this "fact-specific" question, we must guard against giving weight to a district court's general discontent with the Guidelines: "It would be relevant to plain error prejudice if the district court had opined that the sentence produced by the mandatory Guidelines was unreasonable.  A court's dislike of the Guidelines in general is not relevant."  Id. at *7 n.6.

At the resentencing hearing, the district court labored under the assumptions that the Guidelines were mandatory, and that the court had no authority to consider a sentence outside the Guidelines range, even if the court deemed a lesser sentence was more appropriate for Rodriguez-Ceballos.  From the initial sentencing in 2003 to the resentencing in 2004, the district court consistently expressed its belief that the Guidelines range resulted in a disproportionate sentence for Rodriguez-Ceballos.  The district court never expressed its general dislike of the Guidelines, but, more pointedly, enunciated its dislike for the sentence it was required to impose on Rodriguez-Ceballos under the mandatory Guidelines system.  As we read the resentencing transcript, we glean the district court nearly apologizing to Rodriguez-Ceballos for the sentence the court believed it was required to impose under the Guidelines.  We are confident there exists a reasonable probability that, had the district court known the Guidelines were advisory and the court were free to consider the Guidelines together with other sentencing goals listed in 18 U.S.C. § 3553(a), the district court would have exercised its discretion by imposing a more favorable sentence.

Given Rodriguez-Ceballos's success in handily meeting the first three <u>Olano</u> conditions, we conclude Rodriguez-Ceballos also has established the fourth condition for plain error, such that we may exercise our discretion to remand for resentencing. The district court departed downward at the initial sentencing. When this court reversed and remanded for resentencing, the district court, still operating under a mandatory Guidelines system, expressed concern that Rodriguez-Ceballos's sentence was inappropriate. If the district court were provided an opportunity to resentence Rodriguez-Ceballos based on the advisory Guidelines and objective consideration of the section 3553(a) factors, the district court could depart downward from the sentencing range suggested by the Guidelines. Given the state of this record, affirming Rodriguez-Ceballos's sentence despite the district court's erroneous belief it was required to impose a sentence which the district judge clearly thought had a disproportionate impact on Rodriguez-Ceballos would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." <u>Johnson</u>, 520 U.S. at 467. Although we understand "there may be plain <u>Booker</u> errors that meet the third <u>Olano</u> factor but not the fourth," <u>Pirani</u>, 2005 WL 1039976, at *7, this is not one of those cases.

Therefore, we conclude Rodriguez-Ceballos established plain error on appeal, and he should be afforded an opportunity to be sentenced under the advisory Guidelines system. Of course, nothing in this opinion suggests a downward departure is required in this case, as the district court will make that determination by considering the Guidelines range along with the section 3553(a) factors.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court, vacate the sentence, and remand for resentencing in light of <u>Booker</u>.

_____