# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1827

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| John J. Lincoln, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 2004
Filed: May 26, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

John J. Lincoln (Lincoln) pled guilty to distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court[1] sentenced Lincoln to 168 months' imprisonment and five years supervised release. Lincoln appeals, arguing (1) a prior marijuana offense should not have been scored in calculating his criminal history points because the prior offense

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

was expunged, and (2) he should not have received a two-level enhancement for obstruction of justice. We affirm.

## I. BACKGROUND

In December 2002, Lincoln made at least four methamphetamine sales to confidential informants and to undercover narcotics agents. On June 27, 2003, Lincoln was indicted on two counts of distribution of 50 grams or more of methamphetamine. On June 30, law enforcement executed a federal arrest warrant on Lincoln at his home. At the time of arrest, Lincoln possessed marijuana and some firearms. Lincoln was released the same day on pretrial supervision. On September 4, the Pretrial Services Office (Pretrial Services) submitted a Non-Compliance Memorandum to the district court, alleging Lincoln failed to appear for random urinalysis testing during the entire month of August. On September 8, Pretrial Services submitted a second Non-Compliance Memorandum to the district court, restating the violations set forth in the September 4 memorandum, and also alleging Lincoln was arrested on September 7 by the Jackson County, Iowa, Sheriff's Department for operating while intoxicated (OWI) and failure to maintain control. On September 11, Lincoln failed to appear in the district court for jury selection in his trial for the drug offenses. The district court issued a warrant for Lincoln's arrest, and Lincoln was arrested on September 16. Trial was rescheduled to commence on September 24. On September 23, Lincoln pled guilty to one count of distributing 50 grams or more of methamphetamine.

Three years earlier, on July 26, 2000, Lincoln was arrested for marijuana possession. He later pled guilty to the offense in Iowa state court. Upon review of Lincoln's plea agreement, in which Lincoln admitted guilt, the Iowa district court ordered a deferred judgment. In its order, the court stated that, if by December 7, 2002, Lincoln "ha[d] not violated the terms of his probation, this case shall be expunged from his record." On March 12, 2004, twelve days before sentencing in the instant federal case, the state court "expunged from public access" the court's file of

the marijuana charge, "pursuant to Iowa Code section 907.4," but conditioned expunction on Lincoln's payment of $57.41 in costs. On March 22, 2004, Lincoln paid the costs owed, which triggered the expunction authorized on March 12.

At the March 24, 2004 sentencing in federal court, the district court found the Iowa deferred judgment did not result from a finding of either Lincoln's innocence or a mistake of law. Thus, the district court ruled the deferred judgment should be "scored" to calculate Lincoln's criminal history, resulting in a criminal history category of II.

The district court also assessed a two-level enhancement for obstruction of justice for Lincoln's failure to appear for jury selection and denied a two-level reduction for acceptance of responsibility. In applying the obstruction-of-justice enhancement, the district court found Lincoln's failure to appear for jury selection was willful. The court sentenced Lincoln to 168 months' imprisonment, the bottom of the sentencing range under the United States Sentencing Guidelines (Guidelines).

## II.    DISCUSSION
### A.    Expunged Iowa Conviction

Lincoln argues the plain language of U.S.S.G. § 4A1.2(j) requires a holding that his marijuana offense was "expunged" under Iowa law and may not be counted in assessing his criminal history. "We review de novo the district court's construction and interpretation of Chapter Four of the Guidelines, and we review for clear error the district court's application of Chapter Four to the facts." United States v. Holland, 195 F.3d 415, 416 (8th Cir. 1999) (citation omitted).

We recently decided this precise issue in United States v. Townsend, No. 04-3110, 2005 WL 1083467 (8th Cir. May 10, 2005). In Townsend, we concluded the defendant's prior third-degree burglary conviction, though expunged under Iowa law, "was not expunged due to constitutional invalidity, innocence, or a mistake of law,

-3-

as required under the Guidelines." Id. at *4. Thus, we held the district court properly counted the burglary conviction in calculating the defendant's criminal history. Id. Because the relevant facts of this case and Townsend are indistinguishable, Townsend controls this issue. Therefore, we conclude Lincoln's prior marijuana conviction was not expunged for purposes of the Guidelines.

We also reject Lincoln's argument he was not convicted because the state court never entered judgment against him. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction[.]" Boykin v. Alabama, 395 U.S. 238, 242 (1969); see Ford v. United States, 418 F.2d 855, 859 (8th Cir. 1969) (same). "[A] diversionary disposition resulting from a finding or admission of guilt in a judicial proceeding is counted as a sentence under Guidelines § 4A1.1(c), even if a conviction is not formally entered." United States v. Frank, 932 F.2d 700, 701 (8th Cir. 1991); see United States v. Bagheri, 999 F.2d 80, 82-83 (4th Cir. 1993) (ruling defendant's diversionary sentences would be counted even though the state court never entered a formal judgment of conviction); see also United States v. Tankersley, 374 F.3d 721, 722 (8th Cir. 2004) (noting that, although prior judgment was not entered, the court "fail[ed] to see how [defendant] could have been placed on probation and subject to its restrictions without an underlying conviction"). The district court did not err in counting Lincoln's previous marijuana conviction.

## B.   Obstruction of Justice Enhancement

Lincoln claims the district court erred by misapplying the Guidelines and assessing a two-level enhancement, arguing his failure to appear for jury selection and his failure to notify officials of his whereabouts were not willful. Lincoln also contends he was sentenced in violation of his Sixth Amendment right to a jury trial, as announced in Blakely v. Washington, 124 S. Ct. 2531 (2004). Lincoln argues the district court erred in assessing a two-level enhancement for obstruction of justice based upon its factual findings rather than those of a jury.

During the pendency of this appeal, the Supreme Court, in <u>United States v. Booker</u>, 125 S. Ct. 738, 749-57 (2005), applied the holding of <u>Blakely</u> to the Guidelines.  The Court in <u>Booker</u> excised two provisions of the Sentencing Reform Act of 1984, making the Guidelines "effectively advisory."  <u>Id.</u> at 756-57.  Under the advisory Guidelines system, the district court must "consider Guidelines ranges," though the court is permitted "to tailor the sentence in light of other statutory concerns as well."  <u>Id.</u> at 757 (citing 18 U.S.C. § 3553(a)).  Courts of appeals now review sentences for unreasonableness.  <u>Id.</u> at 765.

Lincoln first claims the district court erroneously applied the Guidelines.  Even after <u>Booker</u>, we continue to review the district court's factual findings for clear error and review its interpretation and application of the Guidelines de novo.  <u>United States v. Mathijssen</u>, No. 04-1995, 2005 WL 1005003, at *1 (8th Cir. May 2, 2005).  The unreasonableness standard applies only to the ultimate sentence the district court imposes.  <u>Id.</u>  As to the propriety of the obstruction enhancement itself, we conclude the district court properly applied the Guidelines.  Section 3C1.1(A) provides a two-level enhancement if "the defendant willfully obstructed or impeded . . . justice during the investigation, prosecution, or sentencing of the instant offense."  The enhancement applies when the defendant "willfully fail[s] to appear, as ordered, for a judicial proceeding."  U.S.S.G. § 3C1.1 cmt. n.4(e).  "Willful" means the "misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway."  <u>United States v. Oppedahl</u>, 998 F.2d 584, 586 (8th Cir. 1993).  The district court has "broad discretion to apply section 3C1.1 to a wide range of conduct."  <u>United States v. Duke</u>, 935 F.2d 161, 162 (8th Cir. 1991).

Lincoln did not argue he was unaware of the scheduled court appearance for jury selection. Lincoln did, however, offer several excuses for failing to appear. Lincoln claimed he lived sixty-five miles from the courthouse, he did not have access to a telephone, he did not have a driver's license, and the woman who was to drive

him to the courthouse had an unexpected medical emergency and was unable to drive him there on September 11. Lincoln called three witnesses to support his claims. Julie Reuter testified she had to take her daughter to Mercy Hospital in Dubuque after the pregnant daughter's water broke on the day Lincoln was scheduled to appear for jury selection. Lincoln's brother, Richard Lincoln (Richard), explained Lincoln did not have a car because Lincoln had wrecked his car in an OWI accident a few days earlier. Richard claimed he could not drive Lincoln sixty-five miles to the courthouse in Cedar Rapids due to Richard's blurred vision. However, Richard drove Lincoln to Dubuque, twenty miles from their home town, so Lincoln could check into Mercy Hospital on September 16. Lincoln's stepson, Timothy Balfe, testified he did not have his own transportation and only had local telephone service at his home. Upon arriving at the hospital on September 16, Lincoln still did not notify court personnel of his whereabouts. Richard believed Lincoln was depressed. Lincoln did not discontinue his obstructive conduct of his own volition; rather, the conduct ceased only when he was arrested five days after he failed to appear in court.

The district court found Lincoln "consciously act[ed] with the purpose of obstructing justice," a factual finding we conclude was not clearly erroneous. The district court found Lincoln offered no valid excuse for failing to appear, observing that, even if the witnesses' testimony were correct, Lincoln still could have walked five miles to a gas station to use a telephone to make a collect call to the United States Marshal Service, his attorney, or the United States Probation Office, to tell them about his transportation problem. The district court noted Richard was well enough to drive Lincoln twenty miles to Dubuque, so he could have driven Lincoln the five miles to a gas station to use a telephone. Based on the circumstances, the district court properly inferred Lincoln intended to obstruct justice. See United States v. Watts, 940 F.2d 332, 333 (8th Cir. 1991). We therefore conclude the district court did not err in applying the obstruction of justice enhancement to Lincoln.

In addition to the propriety of the enhancement itself, we must address the Blakely (now Booker) error Lincoln alleges. As we recently acknowledged, "[t]he standard of review will be critically important in most appeals involving Booker issues." United States v. Rodriguez-Ceballos, No. 04-3390, 2005 WL 1131672, at *3 (8th Cir. May 16, 2005). This pronouncement rings true in this case. Lincoln acknowledges he did not assert a Sixth Amendment objection at his sentencing hearing. Accordingly, we review Lincoln's sentence for plain error, United States v. Pirani, No. 03-2871, 2005 WL 1039976, at *3 (8th Cir. Apr. 29, 2005) (en banc), a demanding standard not easily met, Rodriguez-Ceballos, No. 04-3390, 2005 WL 1131672, at *3 (quoting United States v. Dominguez Benitez, 124 S. Ct. 2333, 2340 (2004)). Under Federal Rule of Criminal Procedure 52(b), which mandates plain-error review, "a court of appeals [has] a limited power to correct errors that were forfeited because not timely raised in district court." United States v. Olano, 507 U.S. 725, 731 (1993). To establish plain error, Lincoln must show "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotations omitted) (alteration in original). If these three conditions are met, the court has discretion to remand the case for resentencing "if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotations omitted) (alteration in original). Plain-error review is to be exercised "sparingly." Jones v. United States, 527 U.S. 373, 389 (1999).

From Pirani, we can assume that the district court committed a Booker error when it applied "the Guidelines as mandatory, and [that] the error is plain, that is, clear or obvious, at this time." Pirani, No. 03-2871, 2005 WL 1039976, at *4. Thus, we must determine whether the error affected Lincoln's substantial rights. In order to show such an effect, Lincoln must establish a "reasonable probability that he would have received a more favorable sentence with the Booker error eliminated by making the Guidelines advisory." Id. at *5.

Nothing in the record indicates the district court would have given Lincoln a more lenient sentence absent Booker error. While the district court sentenced Lincoln at the bottom of the applicable Guidelines range, we note "the parties stipulated to recommend the sentence at the bottom of the range." However, sentencing at the bottom of the range "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error." Id. at *7. "Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights." Jones, 527 U.S. at 394-95. Because Lincoln has not shown a reasonable probability the district court would have imposed a more lenient sentence under an advisory Guidelines system, we find no plain error in Lincoln's sentence.

Finally, we are required to "'take account of the Guidelines together with [the] other sentencing goals' enumerated in 18 U.S.C. § 3553(a)." Pirani, No. 03-2871, 2005 WL 1039976, at *4 (quoting Booker, 125 S. Ct. at 764) (alteration in original). In light of the Guidelines and the factors listed in section 3553(a), we conclude the sentence the district court ultimately imposed was not unreasonable.

III.   CONCLUSION

For the foregoing reasons, we affirm Lincoln's sentence.

_____