# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————————

No. 04-2151

————————————

United States of America,          *

                          *

        Appellee,           *

                          *      Appeal from the United States

    v.                 *      District Court for the

                          *      Northern District of Iowa.

Darcy Jay Betterton,       *

                          *

        Appellant.        *

                          *

                          *

————————————

Submitted:  December 13, 2004
Filed: August 2, 2005

————————————

Before BYE, HANSEN, and GRUENDER, Circuit Judges.

————————————

GRUENDER, Circuit Judge.

Darcy Jay Betterton appeals his conviction on three counts of possession with intent to distribute a controlled substance after having been previously convicted of at least one felony drug offense, in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(B) and 851.  In addition, Betterton raises for the first time on appeal the argument that his sentence, based on the application of the United States Sentencing Guidelines in a mandatory fashion, was unconstitutional.  For the reasons discussed below, we affirm

the conviction but vacate Betterton's sentence and remand to the district court for resentencing.

## I.    BACKGROUND

Betterton was stopped by Carroll, Iowa police officer Jason Fett because the car Betterton was driving had a cracked windshield which impeded the driver's line of sight. Betterton immediately admitted to Officer Fett that his driver's license was suspended. Betterton also informed Officer Fett that the car belonged to his girlfriend, Pam Jones. Officer Fett decided to arrest Betterton for driving with a suspended license. Because the car was stopped in a no-parking area on a busy street, Officer Fett called on another officer, Officer Fleecs, to make arrangements for the car to be towed to a secure bay at the police station for an inventory search pursuant to an unwritten Carroll Police Department impoundment policy. Officer Fett then drove Betterton to the police station, where he was booked and released. Officer Fleecs had the vehicle towed to the station. Betterton made several phone calls from the station in an attempt to find someone to pick up the car, but he initially was unsuccessful.

Before the inventory search of the vehicle commenced, Betterton's friend Donna Vonnahme arrived at the station to pick up the car. Officer Fett informed Vonnahme that he was obligated to inventory the vehicle before releasing it. In addition, Officer Fett learned that Vonnahme did not have cash to pay the tow bill. After Vonnahme returned with sufficient cash, Officer Fett informed her that only the registered owner of the car could sign for it. Shortly thereafter, Pam Jones, the registered owner, arrived to sign for the car. Officer Fett told Jones he would call her when the inventory was completed.

Officers Fett and Fleecs then performed the inventory search. In the back seat, they discovered a zipped black bag of the type commonly used to a hold laptop

computer. The bag contained methamphetamine, cocaine and marijuana, as well as drug paraphernalia and cash. Officer Fett immediately left to prepare a warrant for Betterton's arrest, while Officer Fleecs completed the inventory search.

Betterton was indicted on three counts of possession with intent to distribute a controlled substance after having been previously convicted of at least one felony drug offense, in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(B), and 851. During his jury trial, the prosecution introduced evidence of his two prior convictions of possession with intent to deliver methamphetamine via testimony from the arresting officers and certified copies of the judgments. The jury was instructed that this evidence could only be used to prove Betterton's intent, knowledge, motive, and lack of mistake or accident in carrying out the acts charged in the indictment. The jury found Betterton guilty on all three counts. He was sentenced to concurrent prison terms of 360 months on count one, 360 months on count two, and 120 months on count three. Betterton appeals the district court's admission of evidence obtained from the inventory search and of evidence of his prior convictions. Betterton also raises for the first time on appeal the argument that he was unconstitutionally sentenced under a mandatory application of the Sentencing Guidelines.

## II.  DISCUSSION

### A.  The Inventory Search

The district court denied Betterton's motion to suppress the evidence obtained from the inventory search. We review the district court's factual findings for clear error and its conclusions of law de novo. *United States v. Escamilla*, 301 F.3d 877, 879 (8th Cir. 2002).

Betterton contends that the inventory search violated the Fourth Amendment. To be constitutional, "[a] warrantless inventory search must be done pursuant to

'standard police procedures' and for the purpose of 'protecting the car and its contents.'" *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 372, 373 (1976)). "[P]olice may exercise discretion to impound a vehicle, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)).

Betterton argues that the Carroll Police Department's lack of a written policy controlling the decision to impound a vehicle gave its police officers unconstitutionally broad discretion.[1] However, the absence of a written policy controlling the decision to impound a vehicle does not automatically render an inventory search unconstitutional. While a written policy may be preferable, testimony can be sufficient to establish police impoundment procedures. *Petty*, 367 F.3d at 1012. In addition, an impoundment policy may allow some latitude and exercise of judgment by a police officer when those decisions are based on "legitimate concerns related to the purposes of an impoundment." *Id.*

Officer Fett testified that it was within his discretion to impound the car because it was stopped in a traffic lane in a no-parking zone and would be a hazard if left in that location. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Opperman*, 428 U.S. at 369. In addition, the officers could not allow Betterton himself to drive the car to a safer location because Betterton's license was suspended. Officers Fett and Fleecs both testified that they had no awareness of any criminal history on the part of Betterton and had no reason to suspect the inventory

---

[1]The Carroll Police Department did have a written policy controlling how the inventory search was to be performed. Betterton does not assert that the method of conducting the inventory search was unconstitutional.

search would yield evidence of criminal activity. Therefore, the district court did not err in concluding that the decision to impound was based on the legitimate concern of traffic safety and was "not merely 'a ruse for general rummaging in order to discover incriminating evidence.'" *Petty*, 367 F.3d at 1012 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

Betterton also argues that the public safety interest also would have been served if the police had remained at the scene of the traffic stop and allowed Vonnahme to pick up the car. However, "[n]othing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994).

Finally, Betterton contends that the failure to immediately release the car to its owner, Pam Jones, when she arrived at the station before the inventory search had commenced violated Iowa Code § 321J.4B(5)(a) (2002), which states:

> The following persons shall be entitled to immediate return of the motor vehicle without payment of costs associated with the impoundment or immobilization of the vehicle:
>
> (1) The owner of the motor vehicle, if the person who operated the motor vehicle is not a co-owner of the motor vehicle.

Although it is doubtful that § 321J.4B(5)(a) applies to prevent an inventory of a vehicle after it has been impounded, we do not need to address the issue here. By its own terms, § 321J.4B(5)(a) only applies to impoundments resulting from a violation of § 321J.2, "Operating while under the influence of alcohol or a drug or while having an alcohol concentration of .08 or more (OWI)." *See* Iowa Code § 321J.4B(2). Because there was no § 321J.2 violation in connection with this case, § 321J.4B(5)(a) does not apply.

We conclude that the district court did not err in denying Betterton's motion to suppress the evidence obtained from the inventory search.

## B. Evidence of Prior Convictions

The district court denied Betterton's motion to exclude evidence of his two prior convictions for possession of methamphetamine with intent to distribute. We review the district court's admission of evidence of past crimes under Fed. R. Evid. 404(b) for abuse of discretion, and we will not reverse unless the evidence "clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002) (quoting *United States v. Howard*, 235 F.3d 366, 372 (8th Cir. 2000)).

For evidence of past crimes to be admissible under Rule 404(b), the evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the charged crime; (3) supported by sufficient evidence; and (4) such that its potential prejudice does not substantially outweigh its probative value. *Williams*, 308 F.3d at 837.

Betterton argues that his prior convictions were not relevant to a material issue. However, evidence of past drug-related crimes is relevant to establish knowledge and intent for the charged drug offense. *See, e.g., United States v. Thomas*, 398 F.3d 1058, 1062 (8th Cir. 2005) (holding two prior convictions for distribution of crack relevant to show intent to distribute the crack found in defendant's possession); *United States v. Mendoza*, 341 F.3d 687, 692 (8th Cir. 2003) (holding prior conviction for possession of methamphetamine relevant to show knowledge and intent for conspiracy to distribute where the defendant claimed he was unaware that another person in the vehicle was distributing methamphetamine).

Betterton's prior convictions, one from 1998 and one from 1999, were both for possession of methamphetamine with intent to distribute. They were certainly similar in kind, if not identical to, the charged offenses of possession of methamphetamine, cocaine and marijuana with intent to distribute. Furthermore, given the similarities between the prior convictions and the current offenses, which occurred in 2002, the prior convictions were not overly remote in time from the charged conduct. *See Thomas*, 398 F.3d at 1063; *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (holding evidence of similar drug-related crimes five years in the past was "well within the bounds of admission").

Betterton makes no argument that the convictions were not supported by sufficient evidence. Betterton also fails to show that the evidence of the past convictions would tend to inflame the jury or otherwise suggest that it decide guilt on an improper basis. *See United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002) ("Unfair prejudice ... means an undue tendency to suggest decision on an improper basis.") (quoting Fed. R. Evid. 403 advisory committee note). Furthermore, the district court instructed the jury to consider the evidence only with respect to Betterton's intent, knowledge, motive, and lack of mistake or accident in carrying out the acts charged in the indictment. "A jury is presumed to follow its instructions," *United States v. Flute*, 363 F.3d 676, 678 (8th Cir. 2004) (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)), and therefore "the use of a limiting instruction decreases the danger that unfair prejudice will result from admission of the evidence." *Thomas*, 398 F.3d at 1063.

We conclude that the district court did not abuse its discretion in admitting evidence of Betterton's two prior convictions.

## C.    Sentencing

Betterton argues that his sentence, pronounced under a mandatory application of the Sentencing Guidelines, is erroneous under *United States v. Booker*, 125 S. Ct. 738 (2005).  Before the district court, Betterton did not argue *Apprendi* or *Blakely* error or that the guidelines were unconstitutional.  Therefore, we review his sentence for plain error.  *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc).

We apply the plain-error test as set forth in *United States v. Olano*, 507 U.S. 725, 732-36 (1993).  The test has been stated as follows:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Pirani*, 406 F.3d at 550 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

As in *Pirani*, the first two factors are satisfied because the district court committed error in applying the guidelines in a mandatory fashion, and the error is plain at the time of appellate consideration.  *See Pirani*, 406 F.3d at 550.  To satisfy the third *Olano* factor, Betterton must demonstrate "a reasonable probability that he would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory."  *Id.* at 551.

Because of his two prior felony convictions for controlled substance offenses, Betterton's offense level of 37 and criminal history category of VI were determined from the § 4B1.1 career offender table.  His resulting guidelines range was 360

months to life. The district court sentenced Betterton to the lower end of the range, 360 months. A sentence at the lower end of the range is not, by itself, enough to show a reasonable probability that Betterton would have received a more favorable sentence under advisory guidelines. *Id.* at 553. However, the district court went on to state that "if I had discretion, I would not be giving you a 360-month sentence." The district court also stated that if it had discretion, it would impose a lesser sentence "that would meet all of the objectives of sentencing" and that the 360-month sentence was "too harsh and too severe." This is enough to establish "a reasonable probability that the district court would have imposed a more lenient sentence absent *Booker* error." *Pirani*, 406 F.3d at 553. We conclude that Betterton satisfies the third *Olano* factor.

We must now decide, under the fourth *Olano* factor, "whether to exercise our discretion to review a plain error because it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson*, 520 U.S. at 467). "We do not foreclose the possibility that there may be plain *Booker* errors that meet the third *Olano* factor but not the fourth." *Id.* at 554.

For defendants who meet the first three factors of the plain-error test in the *Booker* context, this Court has repeatedly chosen to exercise its discretion under the fourth factor to vacate the defendant's sentence. We have recognized that "refusing to allow [a defendant] to be resentenced would leave [the defendant] incarcerated for a longer period than that to which the district court would have sentenced him under an advisory regime." *United States v. Fleck*, Nos. 04-1820/04-1928/04-1929, slip op. at 18 (8th Cir. June 29, 2005). We have held that this alone is enough to seriously affect the fairness, integrity, and public reputation of the judicial proceedings that placed the defendant in prison. *Id.*; *see also United States v. Killingsworth*, Nos. 04-1972/04-1973, slip op. at 7-8 (8th Cir. July 6, 2005); *United States v. Plumman*, 409 F.3d 919, 932 (8th Cir. 2005); *United States v. Rodriguez-Ceballos*, 407 F.3d 937, 941-42 (8th Cir. 2005). While we fear that such conclusory analysis of the fourth

*Olano* factor violates *Olano*'s admonition that "a plain error affecting substantial rights does not, without more, satisfy the [plain-error] standard, for otherwise the discretion afforded by [Fed. R. Crim. P.] 52(b) would be illusory," 507 U.S. at 737, we nevertheless feel compelled to follow prior Circuit precedent.

We therefore exercise our discretion to vacate Betterton's sentence and remand to the district court for resentencing. "However, nothing in this opinion should be construed as suggesting [a] more lenient sentence[] . . . [is] necessarily warranted or would be reasonable. The district court must conduct its resentencing analyses in the first instance." *Plumman*, 409 F.3d at 932.

## III.   CONCLUSION

We conclude that the district court did not err in denying Betterton's motion to suppress the evidence obtained from the inventory search, nor in admitting evidence of Betterton's two prior convictions. Therefore, we affirm Betterton's conviction on all three counts. However, we vacate Betterton's sentence and remand to the district court for resentencing under an advisory guidelines regime.

HANSEN, Circuit Judge, concurring.

I fully, but reluctantly, concur in the court's opinion and judgment. The reason for my reluctance is my belief that our prior panel opinions addressing the fourth prong of the plain-error test in *Booker* cases are—with the utmost respect for the views of my colleagues who sat on those panels—irreconcilable with this circuit's en banc precedent and the United States Supreme Court's precedent. Nonetheless, those prior panel opinions bind this panel, and the error I perceive can only be corrected through a petition for rehearing en banc or a petition for certiorari.

Some of the prior panel opinions state or imply that, when a defendant satisfies the first three prongs of the plain-error test by showing that there was plain error which affected his substantial rights, he should be granted relief without being required to demonstrate anything more at the fourth prong of the test. *See United States v. Aldridge*, No. 03-3894, 2005 WL 1630935, at *5 (8th Cir. July 13, 2005) (granting relief after finding the third prong satisfied, without analyzing the fourth prong); *United States v. Rodriguez-Ceballos*, 407 F.3d 937, 941 (8th Cir. 2005) ("Given Rodriguez-Ceballos's success in handily meeting the first three *Olano* conditions, we conclude Rodriguez-Ceballos also has established the fourth condition for plain error, such that we may exercise our discretion to remand for resentencing.").

In my view, these cases are not faithful to binding Supreme Court precedent. The Supreme Court could not have been clearer when it held that "a plain error affecting substantial rights does not, without more, satisfy the [plain-error] standard, for otherwise the discretion afforded by Rule 52(b) would be illusory." *United States v. Olano*, 507 U.S. 725, 737 (1993). In addition to showing plain error affecting substantial rights, a defendant must show that the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Under *Olano*, without such a showing, we are not authorized to exercise our discretion to correct the error.

Some of the prior panel opinions state that a defendant makes a sufficient showing at the fourth prong if he would spend additional time in prison due to the error. *See United States v. Brown*, No. 04-4111, 2005 WL 1668336, at *2 (8th Cir. July 19, 2005) ("We conclude, too, that this is a case in which plain error relief should be granted because we think that Mr. Brown's sentence may well have very significantly exceeded the sentence that the district court would have pronounced if it had applied the correct rule of law. In other words, to let the sentence stand in the present circumstances would be a miscarriage of justice."); *United States v. Killingsworth*, Nos. 04-1972/1973, 2005 WL 1560146, at *4 (8th Cir. July 6, 2005)

("The prospect that Mr. Williams's sentence is much more severe than what the district court would have imposed pursuant to the advisory guidelines and the other considerations set out in 18 U.S.C. § 3553(a) satisfies this last element of plain error."); *United States v. Fleck*, Nos. 04-1820/1928/1929, 2005 WL 1522738, at *9 (8th Cir. June 29, 2005) ("Because Ken has shown a reasonable probability that he would have received a more favorable sentence had the district court treated the guidelines as advisory, refusing to allow him to be resentenced would leave Ken incarcerated for a longer period than that to which the district court would have sentenced him under an advisory regime. We find that this would seriously affect the fairness, integrity, and public reputation of the judicial proceedings that placed Ken in prison."); *United States v. Valdivia-Perez*, No. 03-3987, 2005 WL 1324020, at *1 (8th Cir. June 6, 2005) ("[B]ecause Valdivia-Perez would spend additional time in prison as a result of the imposed sentence, the fairness, integrity, and public reputation of judicial proceedings are seriously affected."); *United States v. Plumman*, 409 F.3d 919, 932 (8th Cir. 2005) ("Based on the district court's comments at sentencing, the district court more than likely would not have imposed life sentences on Counts I through VI under an advisory Guidelines scheme. Under these circumstances, affirming the life sentences would 'seriously affect the fairness, integrity, or public reputation of the judicial proceedings.'" (quoted source and internal marks omitted)).

In my view, these cases are not faithful to binding Eighth Circuit precedent announced by our court en banc. In *United States v. Pirani*, 406 F.3d 543, 553-54 (8th Cir 2005) (en banc), the court acknowledged "that the fairness, integrity, and public reputation of judicial proceedings are seriously affected when a defendant must spend additional time in prison on account of an *illegal sentence*," such as "when the district court applied the wrong mandatory guidelines range because of clerical or other errors" (emphasis added). The court held that "*Booker* error, on the other hand, presents a different situation[;] . . . *the sentence itself is not illegal* under the advisory regime mandated by *Booker*, only the process the district court used in

-12-

arriving at that sentence." *Id.* at 554 (emphasis added). As a result, in cases involving *Booker* error, the court prescribed a "fourth-factor inquiry . . . more akin to *United States v. Cotton*, [535 U.S. 625 (2002)]." *Id.*

*Cotton* addressed the *Apprendi* error of failing to allege drug quantity in the indictment and failing to submit the issue to the petit jury, in violation of the Fifth and Sixth Amendments. The effect of this error was severe: the maximum lawful sentence was 20 years in prison, but the district court had sentenced some defendants to 30 years of imprisonment and other defendants to life in prison. Nonetheless, even finding that the first two factors of the plain-error test had been satisfied and assuming arguendo that the third factor had also been satisfied, the Supreme Court unanimously affirmed the sentences, including life in prison, holding that "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S. at 632-33. The Supreme Court scoured the record as a whole and concluded that the evidence of drug quantity was "overwhelming" and "essentially uncontroverted." *Id.* at 633.

Likewise, in *Booker* cases, I believe that we should review the existing record on appeal to determine whether there is a basis within the 18 U.S.C. § 3553(a) factors for the district court to impose a lower but still reasonable sentence under advisory Guidelines. *See United States v. Ryder*, Nos. 03-3478/3479, 2005 WL 1639460, at *9 (8th Cir. July 14, 2005) (in conducting the fourth-prong analysis, identifying the § 3553(a) factor of age and the § 3553(a)(2)(D) factor of the need for medical care as factors the district court determined were present but was unable to fully take it into account due to the mandatory nature of the Guidelines); *United States v. Whipple*, Nos. 04-1598/1750, 2005 WL 1630946, at *2 (8th Cir. July 13, 2005) (same); *cf. Rodriguez-Ceballos*, 407 F.3d at 941-42 (mentioning during the fourth-prong discussion that the district court had identified the § 3553(a)(6) factor of the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, but was unable to fully take it into

account due to the mandatory nature of the Guidelines). If no mitigating § 3553(a) factors were articulated by the district court at sentencing or are apparent elsewhere in the record, the defendant is not entitled to relief at the fourth-prong of the plain error test. It does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings to affirm a sentence within the statutory range and imposed under Congressionally approved mandatory Guidelines, as has been done tens of thousands of times between the Congress's enactment of the Sentencing Reform Act of 1984 and the Supreme Court's 2005 decision in *Booker*, when there is no apparent basis within the § 3553(a) factors for a lower sentence under advisory Guidelines. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 736-39 (10th Cir. 2005) (en banc).

In the instant case, I can discern nothing in the record that would suggest a reasoned basis within the § 3553(a) factors for imposing a lower sentence on Betterton if the case were remanded for resentencing under advisory Guidelines. To the contrary, everything in the record relevant to the § 3553(a) factors suggests that Betterton richly deserved a sentence at least as harsh, if not harsher, than the one he received for these—his fourth, fifth, and sixth felony-grade drug-trafficking offenses—which he committed while on state parole. If we were writing on a clean slate, I would affirm Betterton's sentence.

However, our panel, including me, is bound by the prior panel opinions until and unless the Supreme Court, or this court en banc, overturns them. With these observations, I join the court's opinion and judgment.

––––––––––––––––––––––––