# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3894

_____

United States of America,        *
                                   *

            Appellee,       *
                                   *   Appeal from the United States

       v.                   *   District Court for the Western
                                   *   District of Missouri.

Tywanne M. Aldridge,        *
                                   *

           Appellant.       *

_____

Submitted:   September 13, 2004
Filed:   July 13, 2005

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Appellant Tywanne Maurice Aldridge appeals his conviction for conspiracy to possess 500 or more grams of cocaine and possession of a firearm in furtherance of a drug trafficking offense. Aldridge argues that the district court[1] erred when it submitted a supplemental <u>Allen</u> charge to a deadlocked jury and when it limited the defense's use of impeachment evidence against a government witness. We affirm as

_____

[1] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

to both issues.  However, we vacate the sentence in this case and remand for resentencing under the Booker remedial scheme.

I.

Aldridge was tried and convicted for conspiracy to possess 500 or more grams of cocaine and possession of a firearm in furtherance of a drug trafficking offense. Aldridge was arrested as the result of a "reverse sting" operation during which a government agent attempted to sell Aldridge "sham" drugs.  At trial, Aldridge argued an affirmative entrapment defense.  As a result, the government had to prove that Aldridge was predisposed to commit the crimes charged.  To meet that burden, the government called Chris McFarlane, Aldridge's uncle, to testify that Aldridge was a part of McFarlane's drug distribution scheme.  The trial court barred Aldridge from cross-examining FBI special agent Rick Young about McFarlane's debriefing report because a co-defendant objected that such a line of questioning constituted "prior bad act" evidence.  The report contained information about Aldridge and his co-defendants, but in one portion relating to the crimes for which he was charged, Aldridge's name was omitted.

At the conclusion of the trial, the district court submitted an entrapment jury instruction patterned after the Eighth Circuit Model Criminal Jury Instructions § 9.01. During deliberations, the jury twice requested further instructions on the issue of entrapment.  First, the jury asked to review an exhibit relating to entrapment.  The district court allowed a tape-recorded phone call to be played for the jury in response to the jury's request.  Second, the jury asked the court to elaborate regarding the definition of entrapment and requested to see a visual aid that had been used in closing argument, but was not admitted into evidence.  The jury identified that the exhibit was from a co-defendant, even though only Aldridge was arguing an entrapment defense.  The district court did not allow the jury to review the visual aid and again read the jury instruction regarding entrapment.

After further deliberations, the jury reported that they had reached a verdict on two defendants, but were unable to do so on the third. The district court then read the Allen charge to the jury as outlined in the Eighth Circuit Model Criminal Jury Instructions § 10.02. After returning from more deliberation, the jury found Aldridge guilty and his two co-defendants not guilty. Aldridge was sentenced to 157 months in prison.

## II.

The first issue raised by Aldridge on appeal is whether the Allen charge issued after the jury's reported deadlock was improper. Because there was no objection to the supplemental jury instruction, this court reviews the district court decision for plain error. United States v. Holy Bear, 624 F.2d 853, 855 (8th Cir. 1980).

An Allen charge is a supplemental jury instruction that advises deadlocked jurors to reconsider and attempt to reach a verdict. Allen v. United States, 164 U.S. 492, 501 (1896); United States v. Walrath, 324 F.3d 966, 970 (8th Cir. 2003). This court has held that the issuance of an Allen charge is neither inherently coercive nor prejudicial. United States v. Cortez, 935 F.2d 135, 141 (8th Cir. 1991). In order to determine if the charge was improper due to coercive effect, the court must evaluate the context in which it was given. United States v. Felix, 996 F.2d 203, 208 (8th Cir. 1993); United States v. Robinson, 953 F.2d 433, 436 (8th Cir. 1992).

This court has recognized four factors to consider as to whether an Allen charge was impermissibly coercive: (1) the content of the instruction; (2) the length of deliberation after the Allen charge was issued; (3) the total length of the deliberation; and (4) any indicia that the jury was coerced or pressured. United States v. Warfield, 97 F.3d 1014, 1022 (8th Cir. 1996).

In the present matter, the instruction content was the standard instruction from the Eighth Circuit Manual of Model Criminal Jury Instructions. This model instruction has been accepted by this court as non-coercive in content. United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991).

The duration of deliberation after the charge was issued was approximately twenty minutes. There is no established bright-line for an acceptable length of deliberation after an Allen charge. However, this court has found ten minute, United States v. Hiland, 909 F.2d 1114, 1137 (8th Cir. 1990), forty-five minute, United States v. Smith, 635 F.2d 716, 721-22 (8th Cir. 1980), and one hour, Warfield, 97 F.3d at 1022, deliberation periods to be acceptable. Given that there is no record of how the jury was split at the time of deadlock, it is impossible to speculate as to what switching or convincing took place after the district court issued the Allen charge.

The length of the overall deliberation in this case was two hours and forty-two minutes. Again, there is no clear rule as to the proper amount of deliberation time, and the appropriateness of the deliberation time is dependent on the facts of a particular case. See Smith, 635 F.2d at 721 (weighing deliberation time against facts specific to a case such as complexity and length of the trial). In "simple case[s]," a jury may not need much time to deliberate before an Allen charge is acceptable. Potter v. United States, 691 F.2d 1275, 1277 (8th Cir. 1982). Further, this court will not conclude that a charge is coercive based solely upon deliberation time. Robinson, 953 F.2d at 437. For a two-day trial, even with multiple defendants, we cannot say that the overall deliberation time " was so disproportionate as to raise an inference that the Allen charge coerced the jury." Smith, 635 F.2d at 722.

There were no other indicators of coercion at the time of the Allen charge. While Aldridge may be correct that the jury could have been confused at not receiving further elaboration regarding entrapment, his counsel's failure to object can

be used to infer that the procedures utilized did not seem coercive at the time. Hiland, 909 F.2d at 1137-38.

Aldridge does not offer sufficient evidence that any of the four factors of coerciveness were present. Further, the lack of objection by Aldridge's counsel at the trial means we review the district court decision with great deference. Therefore, we conclude that the Allen charge was administered within the discretion of the district court, and there is no plain error to justify a reversal.

III.

The second issue raised by Aldridge on appeal is whether the district court improperly limited his ability to impeach a government witness in violation of Aldridge's Sixth Amendment right to confront adverse witnesses. We review a trial court's decision to limit cross-examination for an abuse of discretion. United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997). Our review is also subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

In this case, Aldridge attempted to cross-examine Agent Young about a report that contained Rule 404(b) evidence that had previously been excluded by the district court. The counsel for a co-defendant objected, and the district court sustained the objection. The evidence in question was a debriefing report based upon McFarlane's statements to the FBI. The report did not mention Aldridge by name in one instance and, thus, Aldridge argues that it is inconsistent with McFarlane's testimony that he told the police about Aldridge's involvement in the drug conspiracy.

The inconsistency in the evidence is hard to evaluate because the same report which fails to mention Aldridge's involvement in one portion, prominently mentions his role in a prior drug transaction in a different section. This is not a case where there are two, clear contradictory statements, but rather one clear statement and one

potential omission. This makes the prejudice suffered by Aldridge speculative. Further, the court did not fully exclude the use of the report for impeachment purposes. Rather, the district court only restricted the use of the debriefing report as to one part of the report in one paragraph about the design of the drug distribution network. Aldridge's counsel did not attempt to use any other part of the report for impeachment purposes.

Further, Aldridge had the opportunity to impeach McFarlane without the use of the report. Generally, if other avenues for impeachment exist, there is no Confrontation Clause issue from the exclusion of particular impeachment evidence. Brown, 110 F.3d at 611. Aldridge had numerous other ways to attack McFarlane's credibility on his testimony regarding Aldridge's role without using the report in a cross-examination of Agent Young. Primarily, Aldridge could have questioned McFarlane about whether the report accurately reflected Aldridge's involvement. Aldridge also could have called FBI Special Agent Richard Schoeberl, who assisted the investigation, to the stand to inquire about McFarlane's statements regarding Aldridge's involvement. This questioning could have been performed with no mention of the specific Rule 404(b) evidence and would have allowed Aldridge to properly impeach McFarlane if there was an actual inconsistency. Also, each of the defendants did follow several lines of inquiry relating to the credibility of McFarlane's testimony.

In addition, it is far from clear that Aldridge would have achieved his desired goal of impeachment through his proposed line of questioning. In its proffer to the court, Aldridge's counsel did not call Agent Young to admit that McFarlane had not told him about Aldridge's involvement in the drug conspiracy. Given that the same report in question mentioned Aldridge's involvement in a separate paragraph, it seems likely that Agent Young would have affirmed McFarlane's testimony on Aldridge's involvement. Since Aldridge's counsel failed to proffer Agent Young's

testimony, there is no clear record that the defendant was prejudiced by the district court's decision to bar the report related questioning.

Aldridge relies on United States v. Barnes, 798 F.2d 283 (8th Cir. 1986), to support the argument that the trial court erred. However, in Barnes, the defense was barred from cross-examining a police officer who had withheld tape recordings and lied under oath about the existence of those tape recordings. The defense had sought to impeach that police officer on such evidence, but the trial court disallowed it based on a prior ruling in a pretrial setting. This is distinguishable from the present matter because, in this case, there are no allegations of government suppression and misconduct, the impeachment is much more speculative, and the defense had other opportunities to impeach the witness without using the excluded evidence.

Given the ambiguities in the alleged inconsistency, the multiple avenues of attack available to the defense for impeachment, and the speculative nature of the impeachment evidence, this court would be straining to find an abuse of discretion by the district court.

Even if this court had found that the district court had exceeded its discretion in barring Aldridge's use of the debriefing report in cross-examination, it is hard to see how the harm done would rise above the level of harmless error. Even if Aldridge was improperly restricted in his use of the report, there is no Confrontation Clause violation if "the error was harmless in the context of the trial as a whole." United States v. Caldwell, 88 F.3d 522, 524 (8th Cir. 1996). Because the impeachment was so speculative, the inconsistency in the report was far from apparent, and there was significant other evidence against Aldridge, it is difficult to support the notion that there is reversible error in this matter.

IV.

Subsequent to the issuance of the Supreme Court decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), we directed the parties to file supplemental briefs. In light of that supplemental briefing, we now vacate the sentence imposed and remand for resentencing using the <u>Booker</u> remedial scheme.

Subsequent to the <u>Booker</u> decision, our en banc court decided <u>United States v. Pirani</u>, 2005 WL 1039976 (8th Cir. Apr. 29, 2005). In <u>Pirani</u>, we addressed several issues. These included the question of how "<u>Booker</u> error" is to be preserved and if there is no preservation of error, the standard to be applied under the plain error analysis of <u>United States v. Olano</u>, 507 U.S. 725 (1993). As <u>Pirani</u> discusses, there are four factors that must be satisfied under <u>Olano</u> to establish plain error and correct an error that was not raised at trial. As articulated in <u>Johnson v. United States</u>, 420 U.S. 461, 466-67, the standard is as follows:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

In this case, the district judge made quantity findings and other determinations using a preponderance of the evidence standard. Accordingly, we now know that under <u>Booker</u>, there is error, and as explained in <u>Pirani</u>, the error is plain. Consequently, we turn to the third <u>Olano</u> factor. That is, does the error effect substantial rights? As <u>Pirani</u> explained, we must decide if there is a reasonable probability the defendant would have received a more favorable sentence under an

-8-

advisory guideline regime. <u>Pirani</u> at *21. In this case, we conclude that the defendant has made such a showing. In reviewing the supplemental brief, as well as the sentencing transcript, we note that the district judge specifically indicated at page 11 of the sentencing transcript:

> I believe that the government chose to make a deal with the older, wiser, and more culpable defendant in this case. And I don't mean to suggest that Mr. Aldridge is not responsible for his actions, but I had never thought it appropriate that he be serving more time than his uncle.

The defendant, Aldridge, received a total sentence of 157 months: 97 months for the drug conspiracy, and a 60 months mandatory consecutive sentence for the § 924(c) gun charge. His uncle, who the district court considered to be significantly more culpable, received a sentence of 100 months. Based upon the sentencing transcript in this case, we believe that there is a reasonable probability that if the district court had the discretion to treat the guidelines as advisory, it would have imposed a sentence closer to the sentence received by Mr. Adridge's uncle. Accordingly, we reverse the sentence and remand for resentencing.

V.

Accordingly, the judgment of the district court is affirmed as to the defendant's conviction. The sentence is vacated and remanded for resentencing pursuant to the <u>Booker</u> remedial scheme.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree Tywanne M. Aldridge has failed to show the use of an Allen charge was improper once the jury deadlocked. Further, inasmuch as the majority declines to remand for a new trial on other grounds, I agree the sentence should be vacated and the case remanded for resentecing in light of Booker. I believe, however, the district court improperly restricted Aldridge's right to cross-examine an important government witness, and I disagree with the majority's conclusion of the error being harmless beyond a reasonable doubt. Accordingly, I respectfully dissent.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." United States v. Bartlett, 856 F.2d 1071, 1088 (8th Cir. 1988) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)). The right of confrontation means more than being allowed to confront the witness physically. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (citing Davis, 415 U.S. at 308). The main and essential purpose of confrontation is to provide a meaningful opportunity for the cross-examination of the adverse witnesses. Davis, 415 U.S. at 315. The right is not, however, unlimited. United States v. Risnes, 912 F.2d 957, 959 (8th Cir. 1990). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679. In Delaware v. Fensterer, the Supreme Court held "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." 474 U.S. 15, 20 (1985) (per curiam) (citing Ohio v. Roberts, 448 U.S. 56, 73 n.12 (1980)).

We subject Confrontation Clause errors to harmless-error analysis. Van Arsdall, 475 U.S. at 684.

-10-

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id.

First, I conclude the district court improperly limited Aldridge's use on cross-examination of the FBI's report prepared following McFarlane's debriefing. McFarlane was the government's star witness against Aldridge. To convict Aldridge, the government had to prove he was predisposed to enter into the drug conspiracy before being solicited by the government's informant. Without McFarlane's testimony, the evidence of predisposition was scant to non-existent. Thus, the ability to attack the substance of McFarlane's testimony – not just his credibility – by highlighting his prior inconsistent statements was of paramount importance to Aldridge's entrapment defense.

The majority characterizes the inconsistencies in the report as hard to evaluate. A careful review of the report, however, demonstrates McFarlane clearly provided authorities with two markedly different versions of his alleged drug distribution ring. In one version, McFarlane claimed he provided drugs to Monroe Lockhart who in turn supplied Preston Gardenhire and no one else. Gardenhire then sold the drugs to his brothers, Dywanne and Travis Lockhart. In this version, McFarlane fails to implicate Aldridge.

In a second version, McFarlane claims he supplied Monroe Lockhart who in turn supplied Preston Gardenhire. In this version, however, instead of supplying only Gardenhire, McFarlane claims Monroe also distributed to Dywanne and Travis Lockhart. Additionally, in this version McFarlane added Aldridge as someone who received drugs from Gardenhire.[2]

Aldridge's attorney attempted to highlight these discrepancies during the cross-examination of FBI special agent Rick Young. Counsel for one of the co-defendants, however, objected citing concerns that the testimony might lead to the admission of evidence about his client's previous drug dealings which the court had excluded under Fed. R. Evid. 404(b). Aldridge's attorney assured counsel and the court he intended to limit the cross-examination and there would be no mention of the other defendants. Counsel's assurances appear to have satisfied those concerns, but the court nonetheless inquired of the government whether it would attempt to bring in the previously excluded evidence if the report was used. The government successfully argued counsel's limited use of the report would open the door to the entire report and the court sustained the objection. The district court's failure to recognize its broad authority to prohibit the government from using the report to violate the court's earlier 404(b) ruling was erroneous. Consequently, the restrictions placed by the court on Aldridge's ability to attack McFarlane's testimony were unnecessary and unreasonable.

Notably, the majority and the government fail to explain how the 404(b) evidence would have become admissible. Indeed, the government's argument simply reiterates the district court's ruling without explaining why it was correct. The ruling is especially suspect in light of the fact Aldridge's attorney specifically told the court

_____

[2]Appended to the report, in the form of a diagram, is yet a third version of McFarlane's drug distribution ring that appears to be an amalgam of the two versions outlined above, but includes additional conspirators.

-12-

he would not ask about the other bad act evidence and intended only to question Young about the discrepancies relating to Aldridge. I see no reason why the district court could not have so limited the cross-examination, thereby allowing Aldridge to impeach McFarlane's testimony *and* preserve the earlier ruling.

Second, applying those factors set forth in <u>Van Arsdall</u>, 475 U.S. at 684, I am not convinced beyond a reasonable doubt the error was harmless. Here, as evidenced by the two acquittals, the government's evidence was far from overwhelming. Aldridge did not deny he was involved in a drug conspiracy, but the burden was on the government to prove beyond a reasonable doubt he was predisposed to commit the offense. The only real evidence of predisposition came from McFarlane who operated an extensive criminal enterprise and had much to gain if Aldridge was convicted. Conversely, Aldridge was twenty-two years old, attended the University of Kansas on an athletic scholarship, and had never been arrested or convicted for any crime. Furthermore, the government was unable to offer any evidence to effectively corroborate McFarlane's testimony. Thus, it was extremely important to Aldridge's defense he be allowed to attack both McFarlane's credibility and the substance of his testimony. Indeed, the critical nature of this evidence is demonstrated by the fact Aldridge's two co-defendants, against whom prior bad evidence was ruled inadmissible, were acquitted.

Admittedly, Aldridge was able to cross-examine McFarlane extensively about his criminal past and the deal he worked out with the government. It was, however, important for Aldridge to show not only incentive to lie, but that McFarlane's story was internally inconsistent. McFarlane was the only person who provided substantive testimony suggesting Aldridge was involved with drug trafficking before he met the government's informant. The only other evidence the government points to as tending to show predisposition *before* this deal is one stray comment of dubious value on a tape recording. Because McFarlane told two different stories about Aldridge's involvement in *prior* drug dealings, and because his testimony was pivotal to the

-13-

government's case, Aldridge should have been afforded every opportunity to discredit the testimony.

The district court intimates Aldridge attempted to use information in the report which had been the subject of the earlier Rule 404(b) ruling. As the transcript indicates, however, it is abundantly clear Aldridge's attorney did not intend to mention Gardenhire or Lockhart during the attempted cross-examination. The district court also concluded any error was harmless because Aldridge missed other opportunities to elicit the same information. For example, the court and the majority suggest Aldridge could have asked the same questions of a second FBI agent who was present during the debriefing. If, however, the court would not allow Aldridge to ask the questions of Young, it is reasonable to conclude any attempt to ask them of another witness would have met a similar fate. Further, using the written report would have been more effective than simply asking whether McFarlane gave contradictory statements during the debriefing.

Finally, I cannot agree with the majority's conclusion that the district court did not fully exclude the use of the report for impeachment. My review of the transcript suggests the report was excluded in its entirety. But, even if Aldridge could have used other portions of the report, the district court's error was not obviated. The most effective use of the report was to demonstrate the inconsistencies in McFarlane's statements to the FBI. To allow Aldridge full use of other portions which were of no benefit to his defense hardly cures the error.

I recognize this is a close case. In the end, however, given the district court's erroneous evidentiary ruling, the paucity of evidence of predisposition, the government's use of an informant and witness who had a great deal to gain from lying, and the acquittal of Aldridge's co-defendants, I cannot say the error was harmless beyond a reasonable doubt. Accordingly, I would vacate the conviction and remand for a new trial

_____