# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3031

———————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal From the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Nebraska.
Corey Spigner,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

———————

Submitted:　February 16, 2005
Filed:　August 1, 2005

———————

Before BYE, HEANEY, and MELLOY, Circuit Judges.

———————

HEANEY, Circuit Judge.

Corey Spigner pleaded guilty to and was convicted of conspiring to distribute 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. §§ 841 and 846. His offense subjected him to a ten-year mandatory minimum sentence, see 21 U.S.C. § 841(b)(1)(A)(iii), but Spigner received a sentence fifteen months greater than the mandatory minimum due to the district court's use of the United States Sentencing Guidelines (Guidelines). On appeal, Spigner challenges the sentence imposed by the district court because it was based on an erroneous (yet understandable) belief that the Guidelines were mandatory. We remand for resentencing.

## BACKGROUND

On January 23, 2004, Spigner was indicted for engaging in a conspiracy to distribute 50 grams or more of crack from on or about January 1, 2000, to July 19, 2003. He was arrested for this offense on January 30, 2004, and granted conditional release that same day. On March 30, 2004, he entered into a plea agreement, whereby he agreed to plead guilty to the offense contained in the indictment. In that agreement, he admitted responsibility for between 150 and 500 grams of crack, which carried a Guidelines base offense level of 34. See USSG § 2D1.1(c)(3). The parties also agreed that "no motions for upward or downward departure will be filed." (Plea Agreement at ¶ 9.)

At some point during the pendency of this action in district court, it became clear that Spigner was suffering from serious chronic health problems. During the April 14, 2004, change of plea hearing, Spigner informed the district court that he was on a daily regimen of the medications Lotensin and Norvasc to control his high blood pressure, and Renagel for his kidney problems. The court ordered a presentence investigation report (PSR) to be prepared, and allowed Spigner to remain on pretrial release until sentencing.

The PSR confirmed that Spigner was plagued by serious ailments:

> Mr. Spigner reported he suffers from health problems related to anemia and high blood pressure. He stated that due to his high blood pressure going undetected for a long period of time, his kidneys have failed. He reported he needs a kidney transplant and is on the donation list. He is also on three medications for the condition: norvasc, lotisen [sic], and renagel.

(PSR at ¶ 61.) The PSR also remarked that Spigner had been unemployed since 1991 due to his health problems.

On July 12, 2004, the district court held Spigner's sentencing hearing. Spigner, through his lawyer, informed the court that he required additional treatment for his health problems. Spigner was forced to perform dialysis for his kidney failure, and had a catheter surgically placed in his chest so that he could do so. He was scheduled for surgery that week to insert a catheter in his arm that was expected to eventually replace the one in his chest. The following week, he was scheduled for another surgery to remove his thyroid. Based on these circumstances, Spigner asked that the court either reschedule the sentencing hearing after his surgeries, or allow him to self-report to serve his sentence at a later date. The government stated that it had no objection to allowing Spigner to self-report, and the court granted the request. The district court then informed Spigner that "I think the low end [of the Guidelines] is a sufficient sentence so you don't need to argue for that; but if there's anything else that you'd care to say, be my guest." (Sentencing Tr. at 7.) Because the parties had stipulated in the plea agreement that they would not request a departure from Spigner's Guidelines range, Spigner's only request was that the court recommend that the Bureau of Prisons place him somewhere he could get the medical treatment he needed. The court then imposed a 135-month sentence, the lowest allowed under the Guidelines. In its oral pronouncement of sentence and its written judgment, the district court stressed that the Bureau of Prisons should take note of Spigner's medical condition, as well as the possibility of an upcoming transplant, and provide him necessary treatment. The court then reiterated that it was granting Spigner's request to self-report, and gave him a report date of September 13, 2004.

On September 8, 2004, Spigner filed a motion to extend the time for self-surrender to November 12, 2004. His motion stated:

> The Defendant's medical condition has been well known to the court and he requires regular dialysis treatment. Previously, the Defendant has undergone surgery for placement of a dialysis catheter in his chest. Approximately three weeks ago, he underwent another surgery for placement of a substitute catheter in his arm. He is scheduled to be seen

-3-

by his doctor on September 16, 2004 at which time the doctor will evaluate the status of the new arm catheter, and assuming the new arm catheter is functioning, the doctor will then authorize use of the arm catheter for dialysis for a trial period of two weeks. Should the arm catheter continue to function properly for those two weeks, the doctor will then schedule a general anesthesia surgery for removal of the chest catheter. Such procedure would likely take place in the time frame of October 11, 2004 to October 22, 2004.

(Mot. to Extend Time for Self Surrender at ¶ 2.)

The district court granted Spigner's motion the next day, finding good cause for the time extension. On November 15, 2004, Spigner reported to Devins Chronic Care Federal Medical Center in Ayer to begin serving his sentence.

## ANALYSIS

Spigner claims that his sentence cannot stand because it was imposed by way of an unconstitutional mandatory Guidelines scheme. He is correct in this assertion; sentencing under the mandatory Guidelines regime has been held unconstitutional by the Supreme Court. United States v. Booker, 125 S. Ct. 738, 755-56 (2005). Because Spigner did not raise this claim in the district court, however, we review for plain error. United States v. Pirani, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc). Under our circuit's plain error standard, Spigner is only entitled to a remand for resentencing if he can show that there is a "'reasonable probability,' based on the appellate record as a whole, that but for the [Booker] error he would have received a more favorable sentence," Pirani, 406 F.3d at 552; see also id. at 551 (noting a defendant may establish prejudice by demonstrating a "reasonable probability that he would have received a more favorable sentence with the Booker error eliminated by making the Guidelines advisory"), and that the error "seriously affects the fairness, integrity, or

-4-

public reputation of judicial proceedings," id. at 553 (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

In the wake of Booker, the district court's duty at sentencing is not merely to calculate the appropriate Guidelines range and then determine if a departure is appropriate. Rather, Booker "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Booker, 125 S. Ct. at 757 (citations omitted); accord United States v. Mashek, 406 F.3d 1012, 1016-17 (8th Cir. 2005) (holding that the appropriate review of a sentence post-Booker is first to determine if the sentencing court correctly calculated the Guidelines range, and then to consider whether the ultimate sentence is reasonable in light of the sentencing factors enumerated in 18 U.S.C. § 3553(a)). Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary," to account for the nature and seriousness of the offense, provide just punishment, deter criminal conduct, protect the public, and avoid sentencing disparities. 18 U.S.C. § 3553(a). The court must also, however, fashion a sentence that "provide[s] the defendant with needed . . . medical care . . . in the most effective manner." § 3553(a)(2)(D).

A number of decisions from this circuit have remanded for resentencing after conducting plain error review of a Booker claim. In United States v. Whipple, 2005 WL 1630946, at *1-*2, (8th Cir. July 13, 2005), a remand was appropriate because the district court stated its displeasure with the Guidelines sentence due to the defendant's health and age, yet felt constrained to impose the sentence because "its hands were tied by the mandatory character of the Guidelines." United States v. Aldridge, 2005 WL 1630935 (8th Cir. July 13, 2005), involved a defendant who had been convicted of conspiracy to possess cocaine and a firearms violation. The court of appeals remanded for resentencing because of the district court's stated displeasure with sentencing the defendant to a higher term than another coconspirator. Aldridge, 2005 WL 1630935, at *5. In United States v. Fleck, 2005 WL 1522738, at *9 (8th

-5-

Cir. June 29, 2005), our court remanded where the district court noted at sentencing that it wished there was some way it could give one defendant a lower sentence. See also United States v. Valdivia-Perez, 2005 WL 1324020 (8th Cir. June 6, 2005) (unpublished decision) (same). In United States v. Plumman, 409 F.3d 919, 931 (8th Cir. 2005), the district court explicitly stated that it would not impose a life sentence but for the Guidelines, and our circuit remanded because there was a reasonable likelihood the defendant would receive a lesser sentence under the advisory Guidelines. In United States v. Rodriguez-Ceballos, 407 F.3d 937 (8th Cir. 2005), we found the district court's discontent with the Guidelines sentence to be a sufficient reason to remand, although the opinion did not state what specific comments by the sentencing court drove the decision.

Many of the above decisions included a transcribed, explicit statement from the district court noting its displeasure with the sentence, but that is not the sole ground for remand when faced with plain error review of a Booker claim. Rather, our court is charged with the duty to review the "appellate record as a whole" to determine whether there is a reasonable probability that the defendant would receive a different sentence absent the Booker error. Pirani, 406 F.3d at 552. The Federal Rules of Appellate Procedure clearly state that the appellate record includes all district court filings and exhibits as well as transcripts of district court proceedings. Fed. R. App. P. 10(a). So while we agree with the statement of our en banc court in Pirani that a sentencing judge's comments about the propriety of a Guidelines sentence is "relevant to plain error prejudice," Pirani, 406 F.3d at 553 n.6, and indeed may be the lodestar in some cases, it is not the only factor for our consideration.

This principle has particular application in Spigner's case. The sentencing transcript itself contains no express statement from the district court that it wished the Guidelines did not bind its discretion. Spigner received the lowest sentence permitted by the Guidelines, and the district court indicated it expected to give that lowest sentence before even hearing argument. While we recognize that "this fact alone does

not give rise to a 'reasonable probability' that his sentence would have been shorter" absent the <u>Booker</u> error, <u>United States v. Whipple</u>, 2005WL 1630946, at \*2 (quoting <u>Pirani</u>, 406 F.3d at 553) (8th Cir. July 13, 2005), it does lend support to that supposition. More important, though, is the record on Spigner's health.[1] The district court was required to impose a sentence reflective of Spigner's need for medical care, see <u>Whipple</u>, 2005 WL 1630946, at \*2 (noting that, pursuant to § 3553(a), the district court must consider the defendant's health in fashioning an appropriate sentence under the post-<u>Booker</u> regime); see also <u>United States v. Ryder</u>, 2005 WL 1639460, at \*8-\*9 (8th Cir. July 14, 2005) (recognizing that the district court must consider a defendant's physical condition and medical needs when imposing a sentence under the advisory guidelines), which in Spigner's case was atypical due to his high blood pressure and kidney ailments. Although he was only thirty-three years old at the time of sentencing, he suffered from high blood pressure so severe it resulted in the failure of his kidneys. He was on a daily prescription regimen requiring two drugs to control

---

[1]Spigner agreed that he would not seek a downward departure on the basis of his health, see USSG § 5H1.4, p.s., but that does not foreclose the argument that the district court could impose a sentence lower than the suggested Guidelines range, see <u>Booker</u>, 125 S. Ct. 750-51, 756-57 (recognizing that the availability of a downward departure under the Guidelines was limited to prescribed circumstances, whereas the new advisory sentencing scheme permits broader considerations of sentencing implications). For this reason, we find <u>United States v. Robinson</u>, 409 F.3d 979 (8th Cir. 2005), to be distinguishable. In <u>Robinson</u>, a panel found no error in the district court's refusal to depart downward based on extraordinary physical impairment. Spigner is not asking for a Guidelines departure, but rather a sentence outside the Guidelines (with no departures). <u>See</u> <u>United States v. Ryder</u>, 2005 WL 1639460, at \*9 (8th Cir. July 14, 2005) ("The prior mandatory nature of the Guidelines deprived the district court of the opportunity to consider age and physical condition in any manner other than as a basis for a Guidelines departure. Now coupled with the requirements in § 3553(a) that a district court consider a defendant's characteristics and the need to provide medical care in the most effective manner when sentencing a defendant, the district court would be well within its discretion to at least consider [the defendants'] ages and medical conditions as non-Guideline factors on remand.").

his blood pressure and a third for his kidney ailment. His condition demanded regular dialysis treatment, and he has been subject to surgeries for the insertions of two different catheters for dialysis. At the time of sentencing, Spigner was on a waiting list for a kidney transplant, but presumably must continue his dialysis indefinitely unless a donor is found.

The record shows that the district court was cognizant of and sensitive to the grave condition of Spigner's health. The court went to extraordinary efforts to ensure that Spigner's medical needs would be met by allowing him to remain free during his case, and granting him the privilege of self-reporting months after the imposition of his sentence. Indeed, due to his offense of conviction, Spigner *could not* remain free unless the district court found "exceptional reasons" why his detention would not be appropriate. 18 U.S.C. § 3145(c); see also 18 U.S.C. § 3143. When these factors are combined with the court's stated predisposition to give a sentence at the low end of the Guidelines (which it did) and insistence that the Bureau of Prisons take note of Spigner's condition, there is a reasonable probability that the district court would have given Spigner a lower sentence.

Having found that Spigner has established that he was prejudiced by the district court's Booker error, we have no trouble in concluding that the error would result in a miscarriage of justice if left uncorrected. United States v. Olano, 507 U.S. 726, 736 (1993). Spigner has demonstrated a reasonable probability that he was sentenced to serve more time in prison than he would have received if the district court treated the Guidelines as advisory only. Allowing Spigner to serve a sentence longer than he would be required to had he been sentenced under the appropriate scheme seriously affects the fairness, integrity, or public reputation of the proceedings that led to that result. Whipple, 2005 WL 1630946 at *2; Plumman, 409 F.3d at 931. We thus exercise our discretion to correct the error.

## CONCLUSION

For the reasons stated above, we hold that Spigner has established that he is entitled to plain error relief for the district court's sentencing error. We thus remand for resentencing.

_____