# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1447
_____

United States of America

*Plaintiff - Appellee*

v.

Isaac Johnson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: January 13, 2023
Filed: June 16, 2023
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

After a three-day trial, the jury convicted Isaac Johnson of conspiracy to distribute 500 grams or more of cocaine. Prior to trial, the district court denied Johnson's motion to suppress twelve ounces of cocaine that investigators found in a warrantless search of the rental car Johnson was driving as he arrived at the Omaha home of local distributor Anthony Moore. Prior to sentencing, the government filed an information pursuant to 21 U.S.C. § 851 seeking a statutory enhancement based

on Johnson's prior Texas state court conviction for a "serious drug felony." See 18 U.S.C. §§ 841(b)(1)(B), 924(e)(2)(A)(ii). Overruling Johnson's written objection, the district court[1] applied the enhancement and sentenced Johnson to a mandatory minimum 120 months' imprisonment. Johnson appeals, arguing the court erred by denying his motion to suppress and by applying the sentencing enhancement, and that there was insufficient evidence to support the jury's finding that he conspired to distribute 500 grams or more of cocaine. We affirm.

## I. Motion to Suppress

A. We will summarize facts found by the magistrate judge and adopted by the district court, which Johnson does not contest on appeal.

At the suppression hearing, FBI Special Agent Anthony Peterson testified that he was the lead case agent for a multi-agency investigation of drug trafficking in Omaha, Nebraska that began in October 2017. The investigators obtained authority to intercept wire conversations between two local dealers, Anthony Moore and Robert Harris-Hearnes. In a conversation intercepted in November 2018, Moore told Harris-Hearnes, "I be one million with Ike, the reason I be one million with Ike . . . cause I be with that man for 7 years." Referring to Ike as his "plug," Moore said, "we so tight, we built the relationship bro . . . . And like I said I returned . . . back $36,000 to that man a month, you know what I'm saying, a month." Investigators intercepted a phone call on December 13, 2018 indicating that Ike was expected to arrive at Moore's house. A person driving a Nissan Altima with Texas license plates arrived at the house and left after about fifteen minutes. A license plate check revealed the

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the Findings and Recommendation of the Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska, ruled on the motion to suppress. The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, handled the subsequent trial and sentencing.

Altima was rented by Isaac Johnson at a Houston airport. Johnson's DMV license photo matched the person who entered and left Moore's residence. Investigators concluded that "Ike" was Johnson.

Additional intercepted calls between Moore and Harris-Hearnes identified Johnson's phone number. At times, Moore would say he was going to "call his guy" and then would immediately call Johnson. In one call, Harris-Hearnes told Moore that the bags Johnson left "were each a gram short." From these calls, investigators believed that Johnson delivered approximately twelve ounces of cocaine to Moore's house on December 13. In other phone calls, Moore arranged for Johnson to travel from Houston to Omaha, likely for resupplies of cocaine. During one call, Moore asked Johnson, "You gonna get it?" Agent Peterson testified that he believed the call was to arrange a cocaine delivery.

On January 16, 2019, investigators were surveilling Moore's residence and overheard Johnson call Moore to say he was about to arrive. Law enforcement saw Johnson arrive, enter with a plastic bag in hand, stay for 15-20 minutes and leave, no longer carrying the bag. Johnson again drove an Altima rented from the Houston airport. Immediately after Johnson left, investigators intercepted calls between Moore and Harris-Hearnes in which they talked about having more product and the ability to fill larger orders. In one, Moore said, "It's ready." Harris-Hearnes replied "Okay" and went to Moore's house. The next day, Moore called Johnson to complain about the cocaine's quality -- "that ain't the same right there." The listener can hear a snorting sound and Moore says, "that right there a little more powdery," and "the other stuff ain't like that."

During a Friday, February 15 call, Moore told Johnson, "Put me on your schedule for Sunday." Johnson confirmed he would. Based on this call, investigators obtained a warrant to search Moore's residence and arranged to execute it on February 17, the day of the scheduled delivery. On February 17, law enforcement

surveilled Moore's house and neighborhood. Using precision location information on Johnson's phone, they tracked him as he drove from Houston to arrive at approximately 3PM. At that time, investigators identified Johnson a few blocks from Moore's house, again driving an Altima with Texas license plates. One investigator followed and watched Johnson arrive at Moore's house and park in the driveway behind Moore's vehicle. A SWAT team parked behind the vehicle and secured Johnson when he exited. Johnson was cuffed and detained but not yet arrested. The SWAT team entered the residence. At some point, law enforcement conducted a warrantless search of the vehicle and found twelve ounces of cocaine in the side door panel. The warrant did not authorize a search of Johnson's vehicle.

B. On appeal, Johnson argues that law enforcement unlawfully searched his vehicle. It is well-established that law enforcement may "search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." United States v. Davis, 569 F.3d 813, 817 (8th Cir. 2009) (quotation omitted). "Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Shackleford, 830 F.3d 751, 753 (8th Cir. 2016) (quotation omitted). Johnson concedes law enforcement had probable cause to believe his vehicle contained evidence of criminal activity. But he argues the "automobile exception" to the Fourth Amendment's warrant requirement should not apply. He argues the underlying basis for a warrantless search -- "the characteristic mobility of all automobiles" -- was not implicated in these circumstances for two reasons. First, his vehicle was immobilized by his detention, and second, law enforcement knew two days in advance that Johnson would arrive in Omaha on February 17, driving an automobile carrying contraband, making their failure to obtain a search warrant constitutionally unreasonable. We review this legal contention *de novo*. See United States v. Evans, 830 F.3d 761, 765 (8th Cir. 2016), cert. denied, 137 S. Ct. 839 (2017).

-4-

We agree with the district court that the contention is foreclosed by controlling precedents. First, as in United States v. Short, 2 F.4th 1076, 1079 (8th Cir.), cert. denied, 142 S. Ct. 626 (2021), Johnson "cites no case holding that the automobile exception does not apply when the vehicle to be searched is temporarily immobilized, and we have found none." As the Supreme Court said in Michigan v. Thomas, "the justification to conduct . . . a warrantless search does not vanish once the car has been immobilized." 458 U.S. 259, 261 (1982).

Second, the Supreme Court has expressly rejected the argument that a warrant is required if law enforcement officers have probable cause to search before the anticipated criminal activity. In Maryland v. Dyson, a defendant convicted in state court of a drug conspiracy offense argued on appeal the trial court erred in denying suppression because, "even if there was probable cause, the warrantless search of his vehicle violated the Fourth Amendment because there was sufficient time after the informant's tip to obtain a warrant." 527 U.S. 465, 466 (1999). The Maryland Court of Special Appeals reversed the conviction, "holding that in order for the automobile exception to the warrant requirement to apply, there must not only be probable cause to believe that evidence of a crime is contained in the automobile, but also a separate finding of exigency precluding the police from obtaining a warrant." Id. The Supreme Court granted the State's petition for a writ of certiorari and reversed. The Court held that the trial court's finding of probable cause that the car contained contraband "alone satisfies the automobile exception to the Fourth Amendment's warrant requirement." Id. at 467. Requiring a separate finding of exigency "is squarely contrary to our [prior] holdings." Id. That ruling is controlling here.

## II. Sufficiency of the Drug Quantity Evidence

Johnson argues the government introduced insufficient evidence he conspired to distribute 500 grams or more of cocaine. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government,

resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Bower, 484 F.3d 1021, 1025 (8th Cir. 2007) (citation omitted).

The evidence presented at trial included twelve ounces (approximately 270 grams) of cocaine found in Johnson's car door. The jury also heard Moore tell Johnson in a February 10 intercepted call that things had "been a little slow" and "he said he's got about 5 off it." Agent Peterson testified that meant Moore had sold five ounces (approximately 140 grams) of what Johnson had supplied. Johnson argues the jury only heard direct evidence of 410 grams of cocaine and no evidence Johnson was aware of Moore's other suppliers, so the evidence was insufficient to support the jury's speculative finding that he conspired to distribute 500 grams or more of cocaine. Like the district court, we disagree.

The jury heard numerous intercepted wire conversations evidencing that Moore and Johnson had an established dealer-supplier relationship long before the drug trafficking investigation focused on Johnson. In the first recorded phone call that mentioned "Ike" on November 10, 2018, Moore told Harris-Hearnes that Ike was his reliable "plug" and Moore had "returned . . . back $36,000 to that man a month." Later calls and investigation established that "Ike" was Johnson.

The jury also heard intercepted calls reflecting earlier trips Johnson made from Texas to resupply Moore in Omaha on December 31, 2018 and January 16 and 27, 2019. In addition to these calls, the jury heard testimony from cooperating conspirator Amanda Ferrell. Ferrell testified she received cocaine from Moore at his home between October 2017 and February 2019. Moore fronted the cocaine to Ferrell for her personal use and to distribute to friends. She met Johnson in mid 2018 when he visited Moore's home. Ferrell testified that intercepted calls between her, Moore, and Harris-Hearnes related to drug transactions. Ferrell testified she bought

one ounce from Moore 4 times, and many other times bought "teeners" (1.5 to 1.75 grams) and "eight balls" (3.5 grams) at Moore's home.

"To convict [Johnson], the jury had to find beyond a reasonable doubt: (1) that there was a conspiracy to distribute 500 grams or more of [cocaine], (2) that [Johnson] knew about it, and (3) that he intentionally joined it." United States v. Erickson, 999 F.3d 622, 629 (8th Cir.), cert. denied, 142 S. Ct. 512 (2021) (citation omitted). Johnson may be convicted based on "all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook." United States v. Foxx, 544 F.3d 943, 951 (8th Cir. 2008) (citation omitted), cert. denied sub nom Osborne v. United States, 558 U.S. 839 (2009). We will affirm "if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007). Here, viewing the evidence in the light most favorable to the jury's verdict, as we must, there was more than sufficient evidence for a reasonable jury to find that Johnson was a key part of a conspiracy to distribute cocaine, and that it was reasonably foreseeable to Johnson the conspiracy distributed 500 grams or more of cocaine.

## III. The Sentencing Enhancement

The Controlled Substances Act ("CSA") provides that a person convicted of an offense involving 500 grams or more of cocaine who committed the offense "after a prior conviction for a serious drug felony . . . shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life." 21 U.S.C. § 841(b)(1)(B). The CSA's definition of "serious drug felony" incorporates the Armed Career Criminal Act's definition which includes "an offense under state law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." 18 U.S.C. § 924(e)(2)(A)(ii). Johnson argues the district court committed plain error in determining that his prior conviction for

-7-

violating § 481.112 of the Texas Health & Safety Code ("HSC") was a qualifying serious drug offense.

Congress prescribed the procedure for determining this issue in 21 U.S.C. § 851. In the district court, before sentencing, the government filed a timely Information stating that it would rely on this prior Texas conviction. See § 851(a)(1). Johnson filed a written Response in which he "denie[d] it's a valid predicate offense upon which increased punishment may be imposed." The district court requested briefing on the issue. In a supporting Brief, relying on the Fifth Circuit's decision in United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016), Johnson argued the Texas statute "criminalizes behavior that is broader than that of the federal statute under which he is charged" because the Texas statute is violated by one who knowingly "delivers" a controlled substance, defined to include "offering to sell a controlled substance." HSC § 481.002(8). The government's Brief in Opposition submitted certified copies of the Texas criminal complaint and judgment. The government noted that Hinkle compared the elements of the Texas statute with the elements of the Sentencing Guidelines offense, whereas we held in United States v. Block, 935 F.3d 655 (8th Cir. 2019), that the Texas statute qualified as a "serious drug felony" under the broader ACCA definition. Both parties used the well-established categorical approach in comparing the elements of the federal and state statutes at issue.

Prior to sentencing, the district court issued a Memorandum and Order concluding that Block is controlling and held that HSC § 481.112 "qualifies as a 'serious drug offense' under the ACCA," as the Fifth Circuit previously held in United States v. Vickers, 540 F.3d 356, 366 (5th Cir. 2008), because the word "involving" in 18 U.S.C. § 924(e)(2)(A) includes an offer to sell drugs. Therefore, the court concluded, Johnson's reliance on Hinkle was "misplaced." In a special verdict returned after the jury found Johnson guilty of the federal offense, the jury unanimously found "that he committed that offense after having been convicted of a serious drug felony for which [he] served more than 12 months imprisonment."

-8-

Johnson returned to this issue at sentencing:

> Johnson: [I]n Hinkle it says . . . manufacturing, delivery or possession with intent to deliver [are] divisible . . . elements . . . . But [Mathis v. United States, 136 S. Ct. 2243] said that the [means of how the crime was committed] like offer to sell or transfer are not supposed to be considered . . . . That's what I wanted to make sure was understood . . . . I wasn't saying that because it was an offer to sell, that it doesn't fit; no. It doesn't fit because possession with intent to deliver is too broad. It's a different element. It doesn't match the generic offense under the ACCA.

> The Court: I understand. So your objection is noted.

On appeal, Johnson "does not assign error to the district court's reasoning." Rather, he argues, for the first time on appeal, (1) the government presented no evidence which substance may have been involved in his prior Texas offense, and (2) our decision in United States v. Oliver, 987 F.3d 794 (8th Cir. 2021), established that, even if the substance was cocaine, the Texas statute is overbroad because it defines cocaine to include "positional isomers" that are excluded from the federal definition of cocaine in the applicable controlled substance schedule in 21 U.S.C. § 812.

(1) The first argument, even if preserved, is without merit. The Texas offense documents submitted to the jury included a "Certification of Criminal History Record Information," which states Johnson was arrested for violation of HSC § 481.1; a "Complaint" which states that "in Harris County, Texas, Cornelius Isaac Johnson . . . did . . . knowingly possess with intent to deliver a controlled substance, namely, Cocaine, weighing at least 400 grams;" and a "Judgment of Conviction by Jury" which states that the offense of conviction was "Possession of a Control [sic] Substance 'Weighing' Over 400 Grams." Johnson argues there was no reliable evidence he was convicted of distributing a controlled substance under federal law because the judgment does not identify the substance and states the case was tried on

an indictment that is not in the record. But the Complaint, which specifically identified the controlled substance at issue as cocaine, was a charging document, which is one of the limited set of documents a court may use in determining whether a prior state conviction was a qualifying felony. See Shepard v. United States, 544 U.S. 13, 26 (2005); United States v. Clark, 1 F.4th 632, 636 (8th Cir.), cert. denied, 142 S. Ct. 511 (2021).

(2) The government argues Johnson waived his second argument by failing to argue it to the district court. Johnson argues the argument was merely forfeited in the district court and therefore, applying the distinction between waiver and forfeiture drawn in Olano v. United States, 507 U.S. 725, 732-35 (1993), our review is for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. See generally United States v. Pirani, 406 F.3d 543, 550 (8th Cir.) (en banc), cert. denied, 126 S. Ct. 266 (2005). Johnson relies on the Supreme Court's recent per curiam decision in Davis v. United States, 140 S. Ct. 1060, 1061 (2020):

> The text of Rule 52(b) does not immunize factual errors from plain-error review. Our cases do not purport to shield any category of errors from plain-error review.

This appeal raises a familiar issue in a novel context. Waiver customarily requires a criminal defendant's "intentional relinquishment or abandonment of a known right," Olano, 507 U.S. at 733, quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938). But here, Johnson (or his attorney) failed to comply with the statutory mandate in 21 U.S.C. § 851(c)(1):

> If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. . . . The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment.

And Congress prescribed the penalty for non-compliance in § 851(c)(2):

> Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, *shall be waived unless good cause be shown for failure to make a timely challenge.*

(emphasis added); <u>see</u> <u>United States v. Law</u>, 528 F.3d 888, 908-09 (D.C. Cir. 2008); <u>United States v. Stephens</u>, 35 F.3d 451, 452-53 (9th Cir. 1994).

The question in <u>Olano</u> was whether Criminal Rule 52(b) permitted plain error review despite the defendant's "failure to make timely assertion of the right" in the district court. 507 U.S. at 731. There is not a hint in that opinion (or in any other we have found) that the Supreme Court intended its forfeiture standard of review to trump a specific statutory declaration that an *argument* not timely made in the district court is *waived unless good cause be shown*. Rules of criminal procedure do not displace contrary legislative commands, unless the legislative branch attempts to control a core judicial function, which is hardly the case here. <u>Cf.</u> <u>United States v. Rounsavall</u>, 115 F.3d 561, 566 (8th Cir. 1997). Moreover, the remedy Congress chose for Johnson's failure to object within its statutory deadline -- waiver "unless good cause be shown" -- is better suited to this issue than plain error review.[2]

---

[2]As the author has previously noted, Rule 52(b) "does not apply to legal arguments not raised in the district court, whether or not those arguments have been affirmatively 'waived.' *Arguments* not made in the district court are usually not preserved for appeal. We have discretion to consider them, but exercise of that discretion does not require the four-step plain error analysis under Rule 52(b). Other standards of review apply to such arguments, whether we call them 'forfeited' or simply not preserved." <u>United States v. Hill</u>, 31 F.4th 1076, 1090 (8th Cir. 2022) (Loken, J., concurring). The statutory waiver remedy in § 851(c)(2) is consistent with this approach to appellate review of unpreserved arguments.

Johnson makes no attempt on appeal to show good cause for his failure to raise an <u>Oliver</u> objection to the district court. <u>Oliver</u> was decided one year before Johnson was sentenced. It was cited in the government's Brief and the district court's order resolving Johnson's objection, though not for its controversial "positional isomer" ruling. Not all members of the court agree with that ruling. <u>See</u> <u>United States v. Myers</u>, 56 F.4th 595, 600 (8th Cir. 2022) (Loken, J., dissenting). The government elected not to seek rehearing en banc in either <u>Oliver</u> or <u>Myers</u> so it can hardly be said the district court committed plain error in not *sua sponte* applying <u>Oliver</u>'s cocaine isomers reasoning to a Texas statute not there at issue. Accordingly, we conclude the second argument Johnson raises for the first time on appeal has been waived.

The judgment of the district court is affirmed.

SMITH, Chief Judge, concurring in part and dissenting in part.

I concur in the majority's holding with respect to Johnson's motion to suppress, the sufficiency of the drug quantity evidence against him, and his first statutory overbreadth argument. I disagree, however, that 21 U.S.C. § 851(c)(2) applies in a manner that results in a waiver of Johnson's overbreadth argument. I would instead review the district court's application of the sentencing enhancement for plain error. Applying the four-step analysis of *Olano*, I would conclude that Johnson has shown plain error. Therefore, I respectfully dissent as to Part III of the opinion.

## I. *Section 851(c)(2) Is Not Applicable*

The majority concludes that the last sentence of § 851(c)(2) acts to bar Johnson's overbreadth argument. Johnson, however, does not challenge the existence, validity, or factual nature of his prior conviction, but he instead challenges whether it qualifies as a conviction that enhances his sentence. In contrast, I believe that the phrase "any challenge" used in § 851(c)(2), within the context of the whole of § 851,

"means only a full-blown, collateral attack in federal court on the prior conviction." *United States v. McChristian*, 47 F.3d 1499, 1503 (9th Cir. 1995).

Whether § 851(c)(2)'s bar applies to claims other than collateral attacks is an unresolved question in our circuit and in some others. *See United States v. Rabb*, 5 F.4th 95, 100 (1st Cir. 2021) ("There remains an open question, though, as to whether 'any challenge to a prior conviction' encompasses an objection to the finality of a prior conviction as opposed to an objection to the existence vel non of that prior conviction."); *United States v. Webster*, 628 F.3d 343, 345 (7th Cir. 2010) (per curiam) ("We have not addressed whether § 851(c)(2) blocks *all* appellate challenges to convictions that were not disputed in the district court, particularly those where, as here, the defendant could argue that the government relied on an offense that does not as a threshold matter meet § 841's *definitional* requirements for a 'prior conviction.'"). *But see Arreola-Castillo v. United States*, 889 F.3d 378, 385–86 (7th Cir. 2018) (performing detailed statutory analysis of § 851(c) to properly construe § 851(e) and concluding that "the word 'challenge,' as used in § 851(c)(2), 'means only a full-blown, collateral attack in federal court on the prior conviction'" (quoting *McChristian*, 47 F.3d at 1503)). In fact, only one circuit has resolved it as the majority here does. *See United States v. Law*, 528 F.3d 888, 908–09 (D.C. Cir. 2008) (per curiam).

*Stephens*, relied on by the majority, is distinguishable from both *Law* and this case. In *Stephens*, the Ninth Circuit considered whether a defendant who wanted an "opportunity to attack the constitutionality of his 1991 conviction" but had failed to raise his attack below had waived it, pursuant to § 851(c)(2). 35 F.3d at 452. The panel correctly found—uniformly with other circuits—that he had waived his collateral constitutional attack on the prior conviction by failing to raise it below in accord with § 851(c)(2). *See id.* at 453–54; *see also United States v. Dickerson*, 514 F.3d 60, 65 (1st Cir. 2008) (holding defendant waived challenge that he was not the person convicted of the offense by failing to raise it below); *United States v. Thomas*,

348 F.3d 78, 88 (5th Cir. 2003) (holding defendant waived constitutional challenge to conviction based on ineffective assistance of counsel by failing to raise it below). Each of these cases involves a challenge to the factual nature or constitutional validity of the prior conviction. This case is different.

## II. *The Statute*

I read the subsections of § 851 differently than the majority. Section 851(c)(2) focuses on direct, constitutionally-based, collateral attacks on prior convictions. Section 851(b), in contrast, requires that courts only inquire whether the defendant "affirms or denies that he has been previously convicted as alleged in the information." Here, Johnson *was* previously convicted as alleged in the information. His argument does not rest on the factual or legal validity of the prior conviction itself. It rests instead on the conviction's legal sufficiency as a sentence-enhancing predicate offense.

Section 851(c)(1) does not require Johnson to present his legal argument in response to the information: "If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information."[3] Johnson's legal argument about whether his prior conviction serves as a qualifying predicate conviction was not waived. Because Johnson's legal argument was not waived by § 851(c)(2), it should be considered under *Olano*'s four-part plain error test. *See* 507 U.S. at 732–35.

---

[3]This is further confirmed by § 851(d)(2), which provides a third category absent from (c): "that the person is otherwise not subject to an increased sentence as a matter of law."

### III. *Plain Error*

*Olano*'s four-part test favors Johnson.[4] We consider first whether there was error; second, whether the error was plain; third, whether the plain error affected the defendant's substantial rights; and fourth, whether the plain error that affected the defendant's substantial rights seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The parties here agree that there was error. Appellant's Reply Br. at 3; Appellee's Br. at 44 ("The government concedes there was error."). The parties agree that the error was plain. Appellant's Reply Br. at 3; Appellee's Br. at 44 ("The error in this case was plain."). The government concedes that "it would be unable to counter Johnson's argument, should one be made, that the error [affected] his substantial rights; the error extended the sentence imposed by at least 5 months." Appellee's Br. at 46–47. Johnson argues that the plain error affected his substantial rights. Appellant's Reply Br. at 3 ("A reasonable probability that the defendant would have received a lighter sentence without the error is apparent."). The plain error affected Johnson's substantial rights by imposing a mandatory minimum sentence longer than the top of Johnson's advisory Guidelines range.

Would declining to correct this plain error threaten to undermine the fairness, integrity, or public reputation of judicial proceedings? Johnson argues that it would. *See United States v. Fleck*, 413 F.3d 883, 897 (8th Cir. 2005) (holding fourth part of

---

[4]I note that Johnson discussed plain error for the first time in his reply brief. This court generally does not consider arguments raised for the first time in a reply brief. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 549 (8th Cir. 2017). In situations like this, though—where the argument is first raised in the opponent's brief—that same rule counsels in favor of considering the argument. *See United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003) ("When courts have exercised their authority to decline consideration of issues raised in reply briefs, they have typically done so out of concern that the opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond.").

*Olano* satisfied where "refusing to allow [the defendant] to be resentenced would leave [him] incarcerated for a longer period than that to which the district court would have sentenced him under an advisory regime"); *United States v. Spigner*, 416 F.3d 708, 713 (8th Cir. 2005) (remanding for district court to reconsider sentence under an advisory rather than mandatory regime to avoid a "miscarriage of justice"); *see also Olano*, 507 U.S. at 736 ("We previously have explained that the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result." (internal quotation marks omitted)). I believe refusing to correct plain legal error that unlawfully lengthened Johnson's incarceration threatens to seriously undermine the fairness, integrity, and public reputation of judicial proceedings. Appellee's Br. at 48 (acknowledging this possibility); *see also Fleck*, 413 F.3d at 897; *Spigner*, 416 F.3d at 713; *Olano*, 507 U.S. at 736.

Because Johnson's argument establishes a plain error of law that resulted in a miscarriage of justice under *Olano*, I would vacate Johnson's sentence and remand for resentencing without the § 851 enhancement.

I concur in part and respectfully dissent in part.

_____